SAMUEL FARNUM, Plaintiff in Error, v. SARAH LOOMIS, Defendant in Error.

<em>Error to Multnomah County.</em>

1. The grantee, under a quit-claim deed, against whom suit is brought for assignment of dower, is not estopped from showing that the husband, through whom he derives title, never was seized of such an estate as entitled the demandant to dower.
2. Under the law of Oregon, dower cannot attach to an equity.

SARAH LOOMIS sued the plaintiff in error, for an assignment of dower in a lot in Portland, claiming that her late husband, James Loomis, was seized of an estate of inheritance in the lot during coverture.

The lot is embraced in the donation land claim of Benjamin Stark, who entered upon his claim in September, 1849,

completing his necessary four years' residence and cultivation in September, 1853.

On the 5th of September, 1850, Stark conveyed the lot to Molthrop, who went into possession under an instrument, which, upon the trial, was excluded from the jury as no deed. On the 6th of March, 1851, Molthrop conveyed to Loomis, the husband of demandant, by a quit-claim deed, which the demandant offered in evidence on the trial, and to which Farnum objected, there being no seal to the instrument, and, therefore, claimed to be no deed.

The objection was overruled, and defendant excepted. On the 11th of May, 1853, Loomis sold the lot to Huntingdon, who afterwards conveyed it to Farnum, whose possession has never been disturbed.

Upon the trial the court gave some instructions, and refused others, to which the defendant, Farnum, by his counsel, excepted. There was a verdict for the demandant. Under this state of facts the cause comes here upon errors assigned.

*Williams & Gibbs*, counsel for plaintiff in error.

*E. D. Shattuck, Esq.*, counsel for defendant in error.

STRATTON, J. The first exception of importance, taken at the trial, was to the instruction of the judge to the jury in the following words: "That the plaintiff was entitled to recover upon proving that she and her husband took possession of the property under a *deed*, unless the defendant showed he had a better title." In this instruction there was error. Farnum was in possession, deriving his title through Loomis, who conveyed to him by a quit-claim deed, and this instruction of the court, to the effect that the defendant, Farnum, must show a better title than the husband of the demandant, or the demandant must recover, was to decide in effect that the defendant was estopped from showing that Loomis was never seized of an estate of which the demand-

ant was dowered.   Let it be assumed for the present that the pretended deed to Loomis was well executed.   This deed was in the ordinary form of a release without the covenants of warranty, conveying such an interest as the grantor then had, and no more.   By such an instrument the grantor himself would not have been estopped.   (2 *Sm. Lead. Cas.*, 624; *Sparrow* v. *Kingman*, 1 *Const.*, 242.)   Nor would the grantee be estopped from denying the title of the grantor, as all estoppels must be mutual.   (*Com. Dig.*, *Estoppel B.*)

It is to be borne in mind that, in this form of conveyance, the grantor does not assume to convey the *land ;* only his interest in it.   He did not undertake to convey an indefeasible estate, nor did he obligate himself to warrant or defend it against any claims or demands, except those derived through himself.   Looking at the plain and obvious meaning of such an instrument, the grantor must be deemed to have referred only to existing claims or incumbrances, and not to any title he might afterwards acquire by purchase or otherwise from a stranger.   (*Comstock* v. *Smith,* 13 *Pick.*, 116; *Wright et al.* v. *Shaw,* 5 *Cush.*, 56; *Watkins* v. *Holman,* 16 *Peters,* 25.)

There is another reason equally conclusive of this particular question.   It is the widow of Loomis who brings this action; and had Loomis conveyed to Huntingdon, and Huntingdon to Farnum, the defendant, by deeds of general warranty, and by which Loomis would have been estopped from denying that he ever had any such estate, or that title passed by his deed, the widow could not have been affected by it.   His covenants would not have bound her, nor would she have been estopped by them.   She would have been neither a party nor a privy, but a stranger to the deed.   It follows that she would not have been concluded, though her husband was; and by the rules of mutuality, if she would not have been bound by it, neither should it estop the grantee.

Upon every principle of mutual right, then, the defendant below ought not to be estopped from showing what estate, if

any, or what interest did pass by the deed; and upon the proof being made, should it appear that the demandant's husband was never seized of such an estate in the lot in controversy, as of which she might be dowered, she ought not to recover in this action, for the subject matter on which she bases her claim was never *in esse.* For these reasons we conclude that there was error in the first instruction given for which the judgment should be reversed.

As the title of Loomis, the husband of the demandant, is fully set out in the record, it becomes necessary to consider another question which was raised in the argument and pressed upon the attention of the court. The question has been considered with some care, for the reason that it is not only decisive of the whole cause under consideration, but fixes a rule of adjudication for the courts of this State upon a point, about which there has been much controversy and no little uncertainty.

By the first section of an act relating to estates in dower (*Oregon Statutes of* 1855, *p.* 405), it is provided, "that a widow shall be dowered of all the lands whereof her husband *was seized of an estate of inheritance,* at any time during the marriage, &c." Was Loomis in his life time, and during his coverture, clothed with an estate of inheritance in the lot, out of which the demandant claims dower? "Every estate of inheritance is fee simple or fee tail." (4 *Com. Dig., Estates, A.,* 1; 1 *Bouv. Law, D.; Inheritance,* 679.)

"The highest estate in lands known to the American law is a fee simple. A fee simple is a pure inheritance or absolute ownership, clear of any qualification or condition, or a time in the land without end, and upon the death of the proprietor gives a right of succession to all his heirs." (1 *Hilliard, R. P., pp.* 35–8.)

For several reasons it is impossible that Loomis possessed such a title as to fill the terms of these definitions. Stark, the original claimant of the land under the donation act, held but an inchoate title, liable to be defeated by non-compliance

Farnum *v.* Loomis.

with the terms of the grant.  So far as the titles of Loomis, and all others holding under Stark are concerned, they were completely at his mercy.  *He* might perfect the title; they could not, nor could they compel him to do so.  Had the deed from Stark, and all the subsequent ones been regular, no higher title could have been transmitted than this original contingent interest of the donation claimant.  "The stream cannot rise higher than its fountain."

The deed from Stark to Molthrop was never acknowledged, and the deed from Molthrop to Loomis was not sealed.  This deed, under the most favorable circumstances, would convey no more than an equity, liable to be defeated by sale to an innocent purchaser, by deed duly executed and recorded. Hilliard, in giving the common law definition of dower, says: "When a man is seized during coverture of an inheritance in lands and tenements, which by possibility any issue of his wife might inherit, such wife shall hold after his death one-third part of these lands and tenements for her natural life, as an estate in dower."  It will be perceived that the statute of this state before quoted is very much in harmony with this definition.  Much of the apparent confusion in the authorities has arisen from the innovation of the statute laws of the several States upon this rule of the common law.

So Chancellor Kent: "The husband must be seized of a freehold in possession and of an estate of immediate inheritance in remainder or reversion to create a title to dower. The freehold and the inheritance must be consolidated, and be in the husband *simul et semel,* during the marriage, to render the wife dowable." (4 *Kent Com.,* 39.)

In England by statutes 3 and 4, Wm. IV, c. 105, dower was extended to equitable inheritances, and mere right of entry without seizin.  As before stated, similar statutes have been passed in many of the States, and the decisions of their courts have been in conformity therewith.  In *Hamilton v. Hughs,* 6 *J. J. Marshall,* 581, in a case much like the present, the court, in deciding the principal point, remarked: "but we

have met with no adjudged case in which it has been determined that a wife is dowable of an equity, or use, resulting by implication of law, from an executory contract, held by the husband at some period of the coverture, and transferred by him in his lifetime. Such is the present case, and should it be decided in favor of Mrs. Hughs, a precedent would be set calculated to have a most important bearing upon the interests of society."

Upon the general question, then, we are of the opinion that the defendant is not entitled to dower in the lot mentioned in the complaint; and we are further of the opinion that, under the statute of this State, dower will not attach to a mere equity.

Judgment is reversed.