Motion to dismiss appeal denied January 29; argued October 23; reversed December 24, 1929; rehearing denied May 27, 1930

## GRATTON *v.* GRATTON'S ESTATE ET AL.

### (283 P. 747)

*Martin L. Pipes, Edgar Freed,* and *Herbert Cooke,* all of Portland (Simon, Gearin, Humphreys & Freed of Portland on the brief) for appellants.

*Isham N. Smith, John F. Logan,* and *E. B. Seabrook,* all of Portland (Malarkey, Seabrook & Dibble of Portland on the brief) for respondents.

RAND, J. This is suit by Arilla Gratton, widow of Isaie Gratton, to set aside the will of her deceased husband upon the ground that it creates a perpetuity. The trial court sustained plaintiff's contention in respect thereto and set aside the will. The correctness of this ruling is the principal question for decision upon this appeal.

From the record before us, it is uncertain at what stage of the proceedings the trial court ruled. There is a complaint, an answer, a demurrer to the answer, an order sustaining the demurrer and a reply to the answer, and no record of an amended answer having been filed. There is also in the record a transcript of testimony taken upon the trial, and all of these matters have been referred to in the argument upon this appeal. We, therefore, will examine the entire record to ascertain whether or not there are any grounds upon which the ruling of the trial court can be sustained and will preface our discussion with the remark that there is no dispute as to the facts, the only dispute being as to questions of law.

The testator died on July 15, 1927, leaving property of considerable value, mostly located in the city of Portland. His heirs at law were plaintiff (his widow) and Paul J. Gratton, a son 28 years of age who had been adopted many years before by testator and his former wife. The pleadings contain a copy of the will which

consists of the original will and two codicils. Testator was divorced from his former wife about 1908, and married plaintiff several years thereafter. Before the divorce and as a settlement with his former wife, the testator conveyed to her certain real properties. At the same time he caused to be organized the Gratton Investment Company, a corporation, to which he and his former wife conveyed all of the remainder of his real property. The capital stock of the Gratton Investment Company consisted of $5,000 divided into 100 shares of the par value of $50 each. Testator subscribed for 98 shares of the capital stock of the corporation and had two other persons, whose names are not disclosed, subscribe for the remaining two shares for the purpose of qualifying them as directors of the corporation. Thereafter testator directed the affairs of the corporation and had full and absolute control over it and of its corporate property until his death. At the time of his death his widow, plaintiff herein, and his son, Paul J. Gratton, each held one of said qualifying shares. So far as the record shows there was no real property standing in the name of testator at the time of his death. He had stocks and bonds of other corporations. He was a man of considerable wealth, in addition to his ownership of the stock of the Gratton Investment Company. The will was made in 1924 and, by its terms, he appointed two executors who were to have charge of his property during the administration of the estate, and when that was completed they were to become trustees of the property for the purpose of carrying out the direction contained in the will, after which they were to make complete distribution to the parties named in the will of all of the property of his estate. By the terms of his will, he gave to a grandson of his wife $1,000, which was to be loaned out by the trustees for the grand-

son until he reached the age of 21 years, at which time it was to be distributed to him. Among the real property conveyed to the Gratton Investment Company and standing in the name of the Gratton Investment Company was testator's home in the city of Portland, where he resided with plaintiff, and also two lots and a residence at Long Beach, Washington. He directed the Gratton Investment Company to convey to plaintiff a life estate in both of said properties and directed his executors to pay the taxes and insurance thereon and to keep up the properties during the life of his widow and, upon her death, he devised both of said properties to his adopted son and directed the trustees to convey the same to his son upon the death of testator's widow. The will states that these properties are to be conveyed to the son in fee simple title upon the death of the widow. He also gave to plaintiff the use of all furniture, household furnishings and effects and the contents of the two residences, which she was to have for the remainder of her life. He also gave her two diamond rings and a diamond pin, and directed his trustees to pay to her $150 per month during the remainder of her natural life unless she should remarry in which event they were directed to pay her $100 per month from the date of her remarriage. By another provision of the will, he directed that his son, Paul J. Gratton, "shall receive when he shall reach the age of 40 years," numerous tracts of land in the city of Portland and vicinity thereof, and directed his trustees to manage and control this property until the son should reach the age of 40 years when they were directed to have the Gratton Investment Company convey the same to him, and, in the meantime, he directed that the son should be entitled to receive the rents and profits from

said property so devised less the repairs, taxes and insurance on the same. Following this devise is this provision:

"Should the said Paul J. Gratton die before he arrives at the age of 40 years leaving issue surviving him, it is my will that an undivided one-half of the property described in this fourth paragraph shall become the property of such issue to be held, managed and controlled by my trustees until such issue shall arrive at the age of 21 years when it shall be turned over to such issue in his or her own right, and the income thereof to be used for his or her support, education and maintenance. Should there be no issue said undivided one-half shall become part of my residuary estate. The remaining undivided one-half of said property shall become the property of the widow of said Paul J. Gratton should there be one; if there should be no widow said undivided one-half shall become part of my residuary estate."

Then follows a direction in the will directing the trustees to convey said real property to the son when he reaches the age of 40 years, but he empowered the trustees upon consent of his son to sell any part of said realty if, in their judgment, it was advisable so to do, the proceeds of which in case of sale were to be loaned and invested by the trustees and managed by them during the interim before his son reached the prescribed age. Another provision of the will directed the trustees to pay out of the income from his estate, if sufficient would remain to carry out all other provisions of the will, to a daughter of his wife the sum of $5,000, and to a sister of testator, should she be living and, if not, then to her children, the sum of $15,000, and if there was not sufficient income after the payment in full of the legacies provided for, then the trustees were directed to pay to the daughter of plaintiff and testator's sister, or her children as the case may be, said legacies

pro rata according to the amount available for the purpose. The seventh and eighth paragraphs of the will are as follows:

"It is my will, and I direct my trustees to hold, manage and control all of my estate until such time as all of the terms and provisions of this my will have been executed, and they are hereby authorized and empowered, either as executors or trustees to sell and convey, lease or mortgage, without any authority or order of court authorizing them so to do, any part or all of my estate not herein specifically bequeathed or devised upon such terms as they may determine and to use the proceeds or the income thereof for the several purposes herein set forth in the order set forth and to cause the Gratton Investment Company to perform such acts as may be necessary to affect the object to be accomplished. And shall loan and reloan such proceeds and all other money not required for other uses upon good real estate security of not less value than double that loaned thereon upon the best terms they may be able to obtain.

"Upon the execution of the several provisions of this will, and after the death of my wife and the complete and full discharge of the duties of the trustees hereunder, I do hereby give, bequeath and devise all of the rest, residue and remainder of my estate in the hands of the said trustees after the payment of the charges, expenses and taxes for which my estate is lawfully and properly liable, to said Paul J. Gratton and my brothers and sisters, share and share alike, and to the lineal descendants of any of them by right of representation, and I do hereby direct my trustees to turn over to them my estate so remaining in their hands."

The codicils made but two slight changes in the will. As originally drawn the will appointed two executors who were to become the trustees upon the completion of the administration of the estate and provided that if either or both should die, resign or be unable or refuse

to act, then the Security Savings and Trust Company was to act in place of either one or both of them as the case might be. The first codicil appointed but one person to act as executor or trustee with the same provision of the appointment of the Security Savings and Trust Company upon his inability or· refusal to act. The second codicil directed that the one share of stock of the Gratton Investment Company held by plaintiff should be assigned and transferred by her to his executor or trustee and declared that the provisions of the will in favor of testator's wife should be in lieu of dower and also of her interest as the holder of one share of stock in the Gratton Investment Company. The second codicil also included in the devise to the son real property not theretofore devised to any one.

■■ It is contended that these provisions in the will to which we have referred attempt to create a perpetuity. We can find no provision in the will which sustains that contention. Under the rule against perpetuities, executory devises or limitations of estates by will are good if the contingency upon which the devise is to take effect must happen within a life or lives in being and twenty-one years thereafter. But if the contingency of an executory devise may not happen within that period, then the executory devise is of no effect and void. That is the utmost length to which property can be tied up by an executory devise and one which attempts to go beyond that limit, plus an allowance for periods of gestation when actually existing, is void. (2 Page on Wills, (2d Ed.), § 1102.) This rule, Chancellor Kent states in *Anderson v. Jackson*, 16 Johns (N. Y.) 382, 8 Am. Dec. 330, was settled by Lord Nottingham in The Duke of Norfolk's Case, 3 Ch. Cas. 1, in 1682, and he says: ''The decision in that case has been

acquiesced in uniformly since.'' That rule is in force in this state. (See *Closset v. Burtchaell,* 112 Or. 585, 230 P. 554, and Oregon cases there cited.) The effect of the rule is to render invalid any future interest or estate in land which may not vest within that period and, when the rule is applied to executory devises, by vesting is meant the coming into possession, and there must be either a vesting in possession or a vesting in interest within the time limit by the rule. ''A future interest which is so limited that it must either vest in possession or in interest within the time indicated by the rule is therefore not too remote.'' (2 Page on Wills, supra.)

■ Again reverting to the will, the devise to testator's widow was of a life estate in certain lands which was to terminate upon her death and, when the life estate was so terminated, the lands were to be immediately conveyed in fee simple title to Paul J. Gratton. This clearly was not too remote for the right to a conveyance of the land will vest in him the moment the life tenant dies. Under the fourth paragraph of the will the lands devised to Paul will be conveyed to him when he reaches the age of forty years, but if he dies before that time then one-half of his share will go to his children if he has any; otherwise that share will go to testator's residuary legates. The other half of Paul's share, if he dies before reaching the age of forty years, must, under the directions of the will, be immediately conveyed by the trustees to Paul's widow if he leaves a widow; otherwise that share will also go to the residuary legaties. The share which is to go to the children of Paul, if he dies leaving children before reaching the age of forty years, must, under the terms of the will, be conveyed to them respectively when they

reach the age of twenty-one years and the net income therefrom must be used in the interim for their education, maintenance and support; so in either or any event, regardless of the time when either Paul or testator's widow may die, the property devised to Paul will vest in him, his children, his widow or testator's residuary legatees, or some of them within the period limited by the rule against perpetuities. Although the trust, it being an active trust, can not be terminated and the residuary legatees receive all of their respective shares until the death of testator's widow nor until the children of Paul reach the age of twenty-one years, if he dies leaving children before he reaches the age of forty years, yet all of these events must happen within twenty-one years after the death either of testator's widow or of Paul, and hence the devise to the residuary legatees is not too remote under the rule against perpetuities. None of these provisions violates the rule against perpetuities or the rule against restraints on alienation.

Nothing said herein is intended to point out the earliest moment when these specific devises will vest in the devisees. We merely intend to hold that, under the will, they must all vest within the life of Paul or that of testator's widow, or within twenty-one years after the death of the survivor thereof, and hence none of them are too remote. We so hold notwithstanding that the testator in his will did not expressly select the lives of Paul and testator's widow as the ascertained persons from whose lives, upon the death of the survivor thereof, the limitation of twenty-one years should be measured. That that was his intention, however, is necessarily implied from the provisions of the will. Mr.

Justice Peckham, speaking for the court in *Fitchie v. Brown,* 211 U. S. 321, (29 S. Ct. 106, 53 L. Ed., 202), said:

"* * * It is the intention of the testator that is to be sought, and such intention is not always found to have been directly, and in so many words, expressed in the will. An intention, which is implied from the language actually used and from facts actually appearing in the will, is to be carried out, provided it does not violate the law. An intention so implied is as good as an intention more plainly and in direct terms expressed. The question is, therefore, whether the testator, by an implication arising from the language used in the will and the facts therein appearing, selected those lives by which the trust is to be limited."

■ Plaintiff also contends that she is entitled to dower in the lands of the Gratton Investment Company of which she is deprived by the will, which renders the will invalid as to her and entitles her to have it set aside. The argument advanced in support of this contention is that, since testator was the sole stockholder of the corporation he was the real beneficial owner of the lands, the corporation merely holding the legal title in trust for him, and that, since testator did not dispose of the stock but attempted to dispose of the lands by directing the trustees to have the corporation convey them to the devisees named in the will, she is deprived of her right to dower. She cites no authority in support of this contention and gives no valid reason for sustaining it.

Under our statute, Or. L., § 1053, a widow is entitled to dower in all the land whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof. Plaintiff's contention is, therefore, foreclosed by the statute. The test under this statute is: Did testator

have an estate of inheritance in the lands at any time during coverture? The lands in question were conveyed to the Gratton Investment Company by testator and a former wife several years before testator's marriage with plaintiff and at no time during his marriarge with her was he seized of an estate of inheritance therein. If testator had died intestate, the lands would not have descended to his heirs but the stock of the corporation would.

██ Under the common law, corporations were permitted to take, hold and dispose of real property for any purpose not inconsistent with those for which they were created. (1 Clark & Marshall on Private Corporations, p. 397, et seq., 1 Washburn on Real Property, (5th Ed.), p. 81.) The power of a corporation to purchase, possess and dispose of real property necessary or convenient to carry into effect the objects of the incorporation, which corporations possessed at common law, is conferred by Or. L., § 6862, and there is no rule of law in this state more firmly established and more universally recognized than that it is within the power of a private corporation to own, hold and possess such lands as are necessary or convenient to carry into effect the objects and purposes of the incorporation. As to such lands the corporation is the absolute owner; hence, while testator was the sole stockholder of the corporation he had no greater estate or interest in the lands owned by the corporation than any other stockholder has in any other corporation; but, since he was the sole stockholder of the corporation and hence no other stockholder could be injured thereby, he had the right and power to direct his executor and trustee to cause the corporation to convey its property in accordance with the terms of his will to whomsoever

he saw fit and he was not obliged, as contended for, to dispose of the stock by his will. When the directions contained in the will are fully complied with, the corporation will have conveyed to the devisees named in the will all of the corporate property, at which time the corporation may be dissolved and its existence terminated. But even if it were true that testator had been the real beneficial owner of the corporate property by virtue of his sole ownership of the stock it could avail plaintiff nothing by way of dower, for no rule is more firmly established in this state than the rule that there can be no dower in an equitable estate in lands, or, as this court has repeatedly said, there is no dower in an equity. In *Griffith v. Griffith,* 74 Or. 225 (145 P. 270), Mr. Justice EAKIN, speaking for the court, said:

"A wife upon marriage acquires, by virtue thereof, no interest in the personal property of her husband, and he has a right to dispose of it as he pleases without her consent; but by a transfer of his real estate he can not defeat her dower therein. She has an inchoate dower only in lands to which he has the title. There is no dower in an equity,   *   *   *."

To the same effect see *Farnum v. Loomis,* 2 Or. 29; *Whiteaker v. Vanschoiack,* 5 Or. 113; *Hadley v. Hadley,* 73 Or. 179, (144 P. 80), *Bosma v. Harder,* 94 Or. 219 (185 P. 741).

We find no merit whatever in plaintiff's motion to dismiss the appeal, which motion is hereby overruled.

For the reasons stated, the decree of the lower court will be reversed and the cause will be remanded with directions to dismiss the suit and without costs to either party upon this appeal.

CoSHOW, C. J., BEAN and BELT, JJ., concur.