Argued December 20, 1935; affirmed January 28; rehearing denied
March 17, 1936

# NELSON *v.* PORTLAND TRUST & SAVINGS
# BANK

(53 P. (2d) 1051, 55 P. (2d) 1105)

20

*Marvin K. Holland,* of Portland, for appellant.

*V. D. Dusenbery,* of Portland (Crum & Dusenbery, of Portland, on the brief), for respondent.

KELLY, J. On the 30th day of December, 1935, plaintiff and defendant executed a trust agreement wherein defendant, thereinafter designated as trustee, admits, certifies and declares that it received and accepted from plaintiff, thereinafter designated as trustor, twenty thousand ($20,000) dollars to hold in trust for the uses and purposes thereinafter stated. We quote the further provisions of said agreement in so far as they are material and relevant to the questions presented here:

"Powers of Trustee

1. Said Trustee shall have full power and authority to invest the said trust fund and keep the same invested in such securities as are prescribed for the investment of trust funds by the laws of the State of Oregon, including the right to purchase such securities as it, the said Portland Trust and Savings Bank, may have on hand from time to time, and at such price as it may hold same for sale to the public, with power at any time, or from time to time, to sell any part or parts of the investments so made as said Trustee shall deem expedient; and the net proceeds of such sale or sales to invest as aforesaid, with power also at any time, or from time to time, to change or vary any of the investment of the principal of the said trust fund as said Trustee shall see fit, and no purchaser from said Trustee shall be under any obligation to see to or to

inquire as to the application of any such purchase moneys.

### Principal and Income Determined by Trustee

2. Said Trustee is hereby vested with sole and absolute discretion and power to determine for any and all purposes of this trust what shall constitute principal of the trust estate, gross income therefrom, and net income available for distribution under the terms of this trust.

### Power to Collect and Disburse Income

3. Said Trustee shall have power and authority to collect all income of said trust and after paying therefrom all taxes rates and charges upon or in respect thereto, and all expenses of whatever nature attending the execution of this trust, including the compensation hereinafter provided for said Trustee for its services, to apply and pay over monthly during the continuance of this trust unto Alice W. Nelson, Trustor, the sum of One Hundred ($100.00) Dollars; the first of such payments to be made on the first day of February A. D. 1926. Such remittances, until further instructed by the Trustor in writing, to be deposited to the credit of her checking account in name of Mrs. Roy H. B. Nelson, in the Northwestern National Bank, Portland, Oregon; provided, however, that the said Trustor shall be entitled to receive the entire balance of such income should she so desire, and upon receipt of written instructions from the Trustor, the Trustee shall apply and turn over to her the entire balance of such income, together with such part or parts of the principal of said trust fund as the said Trustor shall have requested.

In the event that the Trustor shall not withdraw the entire income from said trust fund, the Trustee shall, on the first day of January of each year during the continuance of this trust, transfer to the principal account such amount of income as may have accumulated and remains in its hands; the amount so transferred to be invested and reinvested as herein provided for the investment of the principal of this trust.

### Powers in Case of Default.

4. If at any time there shall be a default or defaults in the payment of the interest or principal, or both, upon any of the investments of said trust fund, then said Trustee shall exercise its honest judgment as to the proper legal proceedings necessary to enforce said claim, or whether legal proceedings shall be taken at all, or whether an accord, compromise or any other method be taken in order to settle such claim or claims and if said Trustee shall exercise its honest judgment in the procedure adopted, such action shall not be open for review by any court or other legal authority.

### Indemnity of Trustee

5. Said Trustor shall indemnify said Trustee for any damage suffered or expense incurred by it in being defendant in any suit at law or in equity brought against it for any cause whatsoever, except its own wilful default, because of its capacity as Trustee hereunder, and said Trustee shall have a first lien upon said trust fund and the income thereof to the extent of such damage suffered or expense incurred.

\* \* \* \* \*

### Trustee's Compensation

10. The Trustee shall have and receive as compensation for its services herein the following fees:

(a) Upon the acceptance of this trust an opening fee of $10.00;

(b) An annual compensation equal to five (5%) per cent. of the income from the said trust;

(c) The sum of $10.00 if this trust is closed during the life of the Trustor, or if terminated after her death, a sum equal to one (1%) per cent of the principal of the trust estate for the distribution, closing and settlement of this trust according to the terms hereof;

(d) Such reasonable compensation for any unusual or extraordinary services rendered by it as Trustee hereunder.''

Plaintiff claims that defendant negligently disregarded its duties as trustee and did not perform its obligations as trustee in the following particulars:

"(1) Defendant invested trust funds in promissory notes secured by real estate of inadequate value in accordance with the statutory requirements of investments by trustees. The real estate forming the basis of security for these investments was also inadequate, irrespective of statutory requirements, and such investments would be negligent, plaintiff contends, irrespective of the statutory standard.

(2) Defendant failed to have real estate, comprising the security, appraised by competent or disinterested appraisers, and to keep evidence of such appraisals on hand.

(3) Defendant invested the trust estate without making proper or any inquiry as to the soundness of the investments, and in many instances, in mortgages which were long past due and delinquent, and which had not been extended of record or otherwise, and after the mortgages were in default for want of payment. Many of the mortgages, into which defendant put plaintiff's trust funds, were those owned by defendant (plaintiff insists) and were not good. This benefited defendant, and has resulted in loss to plaintiff.

(4) Defendant wrongfully expended large portions of the trust fund in manner unknown to plaintiff for services and otherwise.

(5) Defendant took from the principal of the trust estate and deposited to plaintiff's checking account, funds without plaintiff's written direction so to do, as specified in the trust agreement, and thus caused plaintiff to believe funds from what she was drawing in the checking account, were interest on the trust investments, whereas, defendant's bad investments were losing money (in so far as plaintiff was concerned) and defendant was causing plaintiff not to conserve the principal res of the trust, as she otherwise would have done.

(6) Defendant refuses to turn over to plaintiff the remaining balance of the trust or its equivalent in sound securities of the type and value in which trust companies as trustees are authorized to invest trust funds, but insists upon plaintiff releasing defendant from liability or responsibility, before defendant will turn over to plaintiff any trust property or terminate the trust.

(7) Defendant has not acted in good faith as trustee of plaintiff's funds.

(8) Defendant has collected commissions and penalties and various sums as income from the operation of this trust, and has kept such income itself and given plaintiff no credit therefor—much in excess of the 5% commission to defendant on the income from the trust, as provided for by the trust agreement itself, as compensation.''

While the trust agreement herein contains an acknowledgment by the defendant that at the time of its execution defendant received from plaintiff twenty thousand ($20,000) dollars, the record discloses that only nine hundred ($900) dollars in cash was so received. The remainder of the corpus of the trust consisted of notes then held by plaintiff. From 1921, when plaintiff's husband died, until the date of the execution of the trust agreement aforesaid, plaintiff had an arrangement with defendant whereby securities selected by defendant were purchased by plaintiff and in that way the notes were obtained by plaintiff, which she thus delivered to defendant.

At the time this suit was instituted, the trust estate consisted of ten items. Two of these were notes held by plaintiff when the trust agreement was made. Two others are admitted by plaintiff to be good. This leaves six items subject to charge made by plaintiff that, in investing plaintiff's funds pursuant to the terms of said trust agreement, defendant failed to perform its

statutory duty as trustee because, as plaintiff claims, the real property mortgaged to secure these notes was of less value than twice the amount loaned. Section 106, chapter 207, General Laws of Oregon 1925, p. 351, provides,—

"that no trust company may hereafter invest any of the funds held in trust by it except in the following classes of property, or any of them, to-wit: (Three classes of securities to which none of those in suit belong) * * * (4) notes or bonds secured by improved real property in the state otherwise unencumbered, the actual value of which shall not be less than twice the amount loaned thereon."

With respect to all of the items involved herein, there is testimony to the effect that 'the respective pieces of property securing the respective loans were of twice the value of such respective loans.

In reference to the Admiral Apartments upon which a loan was made in the sum of eighty thousand ($80,000) dollars, there is testimony showing a sale thereof for less than one hundred and sixty thousand ($160,000) dollars. The vendor testified that he considered it in the nature of a sacrifice sale.

■ As to that and some of the other property involved herein, there was conflicting testimony as to its condition and the extent of repairs which would be required for its restoration to a desirable and tenantable state; but in our opinion the plaintiff did not prove by a preponderance of the evidence that, at the time plaintiff's funds were used to procure these notes, the property mortgaged to secure them was of less value than double the amount loaned. In thus holding, we are not unmindful that when this suit was instituted values had sharply declined.

This disposes of the first seven of plaintiff specifications of defendant's alleged breaches of its duties as trustee.

The various mortgage notes provided for the payment of additional interest, consisting of interest on interest. Defendant made collection of such interest upon securities belonging to this trust estate as follows:

| | |
|---|---|
| Admiral Investment Co. | $755.08 |
| Arlu Realty Corp. | 65.33 |
| Hugo Kerble | 1.10 |
| Lincoln Realty Co. | 207.43 |
| Multnomah Utilities Co. | 290.78 |
| Mary E. Yoe | 5.72 |

Plaintiff's portion thereof is as follows:

| | |
|---|---|
| Admiral Investment Co. 1/40 | 18.87 |
| Arlu Realty Corp. 1/35 | 1.86 |
| Hugh Kerble | 1.10 |
| Lincoln Realty Co. 1/40 | 1.48 |
| Multnomah Utilities Co. 1/80 | 3.63 |
| Mary E. Yoe | 5.72 |
| | $ 32.66 |

Mr. C. W. DeGraff, vice president of defendant, testified in effect that during the last two or three years the defendant found it necessary to add a collection department from which it sent additional notices, made telephone and personal calls for reinspection of the properties and demands for payment. This witness testified that the returns from this department were not in excess of half of the expense of its maintenance; that it would be hard to explain a proportionate charge for such service; that the defendant simply retained the amounts so collected because of those circumstances.

The comptroller of defendant testified to a correction in plaintiff's account of an overcharge in the sum of $12.66 by the entry of a credit of $15.

Mr. Faunt, a witness for plaintiff, testified to a double credit for a single item of $33.50.

Defendant has not made a charge for its service in collecting interest upon interest, either in statements rendered plaintiff or by answer herein, hence, the question is not before us as to whether such service should be deemed to be unusual or extraordinary. We can not approve the defendant's course however in appropriating the interest designated as penalty which accrued upon some of plaintiff's securities.

The credits mentioned by the comptroller and by Mr. Faunt are in excess of the amount of penalty interest collected, and, hence, we can not say that plaintiff has suffered any loss when these three comparatively small items are considered.

■ Payments in excess of the amount realized as income from the securities in suit were made by defendant to plaintiff. Because of this fact, but without any express authority, defendant charged to the principal sum and credited to the interest account sums aggregating twelve hundred ($1200) dollars. Plaintiff complains of this action. There is no dispute that plaintiff received the money. The semiannual statements rendered by defendant to plaintiff disclosed this as well as other reductions in the amount of the principal sum. It is true that plaintiff claims that she paid no attention to the semiannual statements so received by her, but this does not relieve her of the effect thereof. By the exercise of ordinary diligence, she would have been apprised of the course taken by defendant.

We find no merit in plaintiff's contentions except with reference to the matter of penalty interest.

The decree of the circuit court is affirmed.

It is ordered that neither party recover costs or disbursements or attorney's fee on this appeal.

CAMPBELL, C. J., and BEAN and ROSSMAN, JJ., concur.

---

Petition for rehearing denied March 17, 1936

ON PETITION FOR REHEARING
(55 P. (2d) 1105)

KELLY, J. A petition for rehearing indicates that in the original opinion we held that the trustee is not accountable for an unlawful investment made prior to the inception of the trust arrangement between the trustor and the trustee. The petition also asserts that the court did not consider items 4 and 6 of the investment at all.

We take this occasion to disclaim that we made the holding first mentioned. We also desire it to be known that we did consider items 4 and 6 of the investment. There is testimony in the record to the effect that each of the pieces of property known to this record as items 4 and 6 was of double the value of the loan made upon it. The trial court gave effect to this testimony and we think that we are not justified in holding that the trial court erred in doing so.

■ More than that, the course taken by the parties hereto, with respect to these two items, convinces us that these securities were agreed upon by the plaintiff and defendant. They were held by plaintiff when the trust agreement was made, thereafter reports were furnished semiannually by defendant to plaintiff showing that defendant continued to hold them, and plaintiff

accepted the returns from such administration of the trust.

When the trust agreement was made and ever since then under the express provision of the statute a trust company might lawfully invest funds held in trust by it in such bonds, securities or other evidence of indebtedness as might be agreed upon by the trust company and the party creating the trust: General Laws of Oregon 1925, chap. 207, p. 351, § 106; General Laws of Oregon 1927, chap. 164, p. 178, § 4; Oregon Code 1930, § 32-803, subdiv. 5; Oregon Laws 1931, chap. 278, p. 459, § 17, subdiv. 6; Oregon Laws, Second Special Session 1933, chap. 67, p. 187, § 2, subdiv. 6; Oregon Laws 1935, chap. 212, pp. 315, 316, § 1, subdiv. 6; Vol. 5, Oregon Code 1935 Supp. § 22-1214, subdiv. 6.

For these two reasons, it must be obvious the investments were not unlawful at any time. Plaintiff refers to the general rule announced in 37 A. L. R. 560. We quote therefrom:

"II General rule. It has been stated that the power of a trustee to retain investments received from the creator of the trust is, in the absence of contrary statute or provision in the instrument creating the trust, no different than the power to make the investment."

As stated in the original opinion,—

"With respect to all of the items involved herein, there is testimony to the effect that the respective pieces of property securing the respective loans were of twice the value of such respective loans."

It must be apparent that we have not declared any principle at variance with the general rule mentioned in the petition for rehearing and hereinabove quoted.

■■ Plaintiff also urges that she is entitled to a determination by this court whether an investment of

trust funds by a trustee in unimproved and uninsured real property is valid.

The alleged failure to maintain insurance is not mentioned in plaintiff's complaint and clearly is an afterthought. At least it is not in issue and no determination thereon should be made.

The particular piece of property, upon which plaintiff bases her claim that the trustee should be held liable because such property is unimproved, is known to this record as the Arlu property. When the investment was made, it was improved real property because there was a building thereon appraised by Mr. Vincent at $10,000 from which rent in the sum of $400 per month was being received and which had a potential rental value of approximately $200 per month more.

A short time before the trial—the exact time is not stated—the owner of the property removed the building and converted the property into a parking lot.

The question presented is whether, under this state of the record, the defendant should be required to account to plaintiff in money for this investment. We think not.

The statute of Oregon does not speak as to the duty of a trustee under these circumstances.

Two rules, however, have been suggested by the courts for the solution of this problem. The first of these is that the trustee, who holds an investment not sanctioned by the settlor or under the statute or by the decisions of the courts, has a duty to sell the security as soon as he can reasonably do so and reinvest the proceeds. The second form in which the rule about a duty to convert is sometimes stated is slightly different. Some courts have said in effect that a trustee holding a nonlegal has a duty to convert the security within a reasonable time and reinvest in legals, except in ex-

traordinary cases when he decides to retain the investment for the trust after having used good faith and reasonable diligence and prudence. Vol. 3, Bogert, Trusts and Trustees, § 686:

"It is believed that the courts will permit trustees faced with conversion problems during the depression beginning in 1929 to consider the effect on the general security market of dumping large masses of trust securities. That such large general conversions of trust assets would reduce the market value of other trust properties and bring on a duty to sell still other securities at a large loss is a fact which may well influence a trustee to postpone conversion. A conversion involving a sale at a figure much below the original or inventoried value of the investment will doubtless not be encouraged. The tendency of the courts will undoubtedly be to exhibit great leniency toward trustees who have used reasonably good judgment in periods of uncertainty and acute financial distress." Ibid, authorities cited in note 21.

The petition for rehearing is denied.