Argued June 6, affirmed July 19, 1961

# AGAN ET AL v. UNITED STATES NATIONAL BANK

363 P. 2d 765

*Don S. Willner,* Portland, argued the cause for appellants. With him on the brief were Lenon & Willner and Robert A. Bennett, Portland.

*Cleveland C. Cory,* Portland, argued the cause for respondents. With him on the brief were Hart, Rockwood, Davies, Biggs & Strayer, Portland.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL and LUSK, Justices.

O'CONNELL, J.

This is a suit brought against the executors and trustees of the estates of Maria C. Jackson and Philip Ludwell Jackson by certain employees of the Journal Publishing Company "on behalf of themselves and all other persons now in the employ of Journal Publishing Company or who are associated with the management and operation of the Oregon Journal." The suit is brought to restrain the defendants from administering the trusts in a manner alleged to be in violation of the terms of the trusts.

The trial court entered a decree of dismissal pursuant to its order sustaining the defendants' demurrer to plaintiffs' complaint after plaintiffs declined to plead further.

Plaintiffs allege that the defendant trustee failed to carry out certain directions contained in each of the following parts of the testamentary trusts created by the settlors:

### THE MARIA C. JACKSON TRUST

"2. The net income from the trust shall be distributed by the trustees for use within the State of Oregon for charitable, educational or eleemosynary purposes and for the advancement of public welfare. The trustees shall have wide discretion in the selection of the particular purposes for which said distribution shall be made and shall select beneficiaries as they shall deem to be most appropriate and best calculated to promote the welfare

of the public of the City of Portland or the State of Oregon, or both.

\* \* \* \* \*

" \* \* \* I specifically direct that when and if my executors or trustees, or my executors and trustees, as the case may be, shall in their sole discretion deem it to the best interests of The Oregon Journal as a continuing local newspaper of the character described in paragraph 3 of Article VI of my said last will and testament or to the best interests of the trust estate to make such sale of any stock of Journal Publishing Company they shall exercise their discretion to make such sale in such manner that, if possible, the ownership and control of Journal Publishing Company and the newspaper which it operates shall be retained on a local basis, preferably in the hands of persons who are then in the actual employ of Journal Publishing Company or who are associated with the management and operation of the paper; and I direct that in any disposition of such stock the purpose herein stated shall be carried out even though the amount which may be realized through such sales may be very substantially less than might be obtained if such stock or the paper owned by said Journal Publishing Company were to be sold in a different manner or to other purchasers."

### THE PHILIP LUDWELL JACKSON TRUST

" \* \* \* Without in any way limiting the broad powers herein granted to the trustees to sell and dispose of the assets of the trusts, I express the wish, which shall not be construed to be mandatory or binding upon the trustees, that if any stock of Journal Publishing Company, an Oregon corporation, shall be included in the assets of the trusts, the trustees shall in any disposition of such stock endeavor to do so in a manner such as to perpetuate the Oregon Journal, the newspaper published by Journal Publishing Company as a newspaper which conforms generally to the standards of that news-

paper since the founding thereof by my late father, Charles Samuel Jackson. If it may be done without jeopardy to the standing of said newspaper the trustees shall endeavor to favor and give preference to persons actually in the employ of Journal Publishing Company engaged in the publishing and operation of the newspaper. I appreciate that at this time I cannot adequately define the processes to be adopted by the trustees in carrying out the policies of administration with respect to the stock of the Journal Publishing Company expressed in this paragraph and for that reason I give to the trustees broad powers to be exercised in their discretion in accomplishing the purposes and policies expressed in this article."

The alleged acts constituting the violation of the trusts were described in the complaint, as follows:

"(a) Causing the value of the trust property to depreciate substantially in a manner threatening the retention of the ownership and control of the Journal Publishing Company and the newspaper which it operates on a local basis in that defendants have caused the circulation of the Oregon Journal to decrease substantially, have caused advertising revenues of the Oregon Journal to decrease substantially, have caused the majority of the staff of the Oregon Journal to go on strike and have placed the Oregon Journal in a serious financial condition.

"(b) Entering into agreements with non-local interests which in some measure remove control of the Journal Publishing Company and the newspaper which it operates from the local basis."

The demurrer to the complaint was based upon the following grounds: (a) that plaintiffs had no legal interest in the enforcement of the trust; (b) that the trust being charitable the Attorney General was a necessary party plaintiff; (c) that there were no facts showing that defendants have abused their discretion;

(d) that even assuming an abuse of discretion, plaintiffs have no legally protected interest in the absence of allegations that defendants have decided to sell the stock of Journal Publishing Company, that plaintiffs are ready, willing and able to purchase the stock at a reasonable price, and that defendants are about to act arbitrarily in carrying out a sale of the stock to non-local interests.

The trial court sustained the demurrer on the ground that plaintiffs' interest was not substantial enough to enable them to bring suit. The trial court treated the case as a suit to enforce a charitable trust and since, as it correctly concluded, charitable trusts are enforceable only by the Attorney General and not by a private citizen, it held that plaintiffs were not entitled to maintain this suit for enforcement of the trusts.

Plaintiffs take the position that the provisions of the trust giving the Journal Employees a preference right to purchase the stock made them beneficiaries of a private trust, it being conceded that the other provisions of the trust were charitable in character.

■ We are of the opinion that the provisions of the will referred to did not create a legally enforceable interest in the plaintiffs. To qualify as beneficiaries of the trusts in question plaintiffs must prove that the settlors intended to create an enforceable equitable interest in the class which plaintiff purport to represent. 1 Restatement of Trusts 2d, §§ 25, 127 (1959). Neither trust will bear such a construction. In both trusts the employees and persons associated with the management of the newspaper were designated for preference in treatment merely as an incident of carrying out the settlors' purpose to keep the control of the

paper on a local basis. The preference was to be given the class only in the event that the trustees held stock of the Journal Publishing Company and only if they elected to sell the stock. The language used by both settlors in providing for the contingency of sale is couched in broad discretionary language. This is a factor indicating that the intent was not to bestow an enforceable interest in the alleged beneficiaries. See 1 Bogert, Trusts and Trustees, § 48 at 347 (rev. ed. 1951).

Furthermore, the language is precatory in nature. The Philip Ludwell Jackson trust expressly provides that the conditions attached to the trustees' power to dispose of the stock is only the expression of the settlor's "wish" and that such conditions "shall not be construed to be mandatory or binding upon the trustees." Although the trust further provides that the trustees "shall endeavor to favor and give preference" to the class designated, this provision, when read with the other provisions in the same paragraph relating to the perpetuation of the local control of the paper, indicates an intent merely to guide the trustees and not to command them to act for the benefit of the class.

. Aiding in this construction are other factors. The interest which the class is to receive is left unmeasured. Indefiniteness in this respect is regarded as reflecting an intent not to create a trust interest. 1 Bogert, Trusts and Trustees, § 48 at 346 (rev. ed. 1951). The failure to describe the beneficiaries with certainty is another factor arguing against the existence of a trust. 1 Bogert, Trust and Trustees, § 48 at 345 (rev. ed. 1951).

■ The persons who were intended to have the preference in purchasing the Journal stock held by the

trustees would not be known until the trustees elected to dispose of it, the trust providing that the preference was to be given to those who were "then [at the time of disposition] in the actual employ of Journal Publishing Company or who are associated with the management and operation of the paper." It is possible that no person who had been employed by the Journal at the creation of the trust would be so employed when the trustees' decision was made. The beneficiaries of a trust can consist of a class if the class "is definite enough so that its membership can be ascertained." 2 Scott, Trusts, § 120, p. 836 (1956). And see, 1 Restatement of Trusts 2d, § 120, comment a (1959). The employees of the Journal at any given point of time could be ascertained without difficulty. Therefore, the designated class would satisfy the requirement of definiteness if the time for ascertaining its membership had arrived. But where, as here, the class is not ascertainable at the time of the creation of the trust, the trust must fail unless the membership of the class is ascertainable within the permissible period of the rule against perpetuities. 1 Restatement of Trusts 2d, §§ 112, 120, comment a (1959); 2 Scott, Trusts, § 120 (1956).

To satisfy the requirements of the rule against perpetuities it is not enough to show that the membership of the class is likely to be ascertained within the permissible period; the trust must be so drawn that the interest must vest, if it will vest at all, within the permissible perpetuities period. 6 American Law of Property, § 24.21 (1952); Gray, The Rule Against Perpetuities, § 214 (4th ed 1942); Morris and Leach, The Rule Against Perpetuities, 68-69 (1956). The permissible period under the common law rule against perpetuities, which we have adopted in this state, *Dean*

*et al v. First Nat'l Bank et al,* 217 Or 340, 357, 341
P2d 512 (1959) ; *Heilig v. Daniel et al,* 203 Or 123, 129,
275 P2d 854 (1954), opinion revised, 203 Or 134, 278
P2d 988 (1955); *Gratton v. Gratton's Estate,* 133 Or
65, 72-73, 283 P 747 (1929), is measured by lives in
being and twenty-one years plus applicable periods of
gestation after the creation of the interest. 6 American
Law of Property, §§ 24.12-24.15 (1952) ; 4 Restate-
ment, Property § 374 (1944) ; Gray, The Rule Against
Perpetuities, §§ 201, 220-222 (4th ed 1942) ; 2 Simes,
Law of Future Interests, §§ 490-493 (1936). In the
case at bar, since the vesting of the purported interest
does not relate to any measuring lives, the alleged gift
is to be tested by that part of the rule requiring a
vesting of the interest within twenty-one years from
the date of the creation of the interest, ordinarily
referred to as the "period in gross." 6 American Law
of Property, § 24.14 (1952) ; 4 Restatement, Property
§ 374 (b), comments m-o (1944) ; 2 Simes, Law of Fu-
ture Interests, § 493 (1936) ; Gray, The Rule Against
Perpetuities, § 223 (4th ed 1942).

It is patent that the interest claimed by plain-
tiffs would not necessarily vest within twenty-one years
after the creation of the trust since the trustees might
not elect to dispose of the Journal stock until after
the twenty-one year period had expired. Therefore,
even assuming that the settlors did intend to create
an enforceable interest in the class represented by
plaintiffs, the gift to the class would be void by reason
of violating the rule against perpetuities.

■ The rule against perpetuities does not apply
to present trusts for charitable purposes, 2 Restate-
ment of Trusts 2d, § 365 (1959) ; 4 Restatement, Prop-
erty, § 398 (1944) ; 4 Scott, Trusts, § 365 (1956) ; 2
Simes, Law of Future Interests, §§ 541, 554 (1936), but

this can be of no comfort to plaintiffs because, interpreting the trust most favorably to them, they would acquire an interest in a private trust arising out of the administration of a charitable trust. It is the general rule that a charitable trust is enforceable only by the appropriate representative of the community, usually the Attorney General. 2A Bogert, Trusts and Trustees, §§ 411-417 (rev. ed. 1953); 4 Scott, Trusts § 391 (1956); Comment, Supervision of Charitable Trusts, 21 U Chicago L Rev 118 (1953); Karst, The Efficiency of the Charitable Dollar: An Unfulfilled State Responsibility, 73 Harv L Rev 433 (1960); Bogert, Proposed Legislation Regarding State Supervision of Charities, 52 Mich L Rev 633 (1954).

Thus, plaintiffs are faced with a dilemma. If plaintiffs' alleged interest is considered to be a private trust, it violates the rule against perpetuities. If the trust is considerd to be wholly charitable, plaintiffs have no standing to enforce it unless they have a sufficient special interest. 2 Restatement of Trust 2d, § 391 (1959). But to avoid the horn of the dilemma presented by the rule against perpetuities, plaintiffs argue that the charitable character of the trust so affects the alleged gift to the class that the immunity from the rule against perpetuities which preserves the charitable trust also preserves the private gift over. We cannot accept this argument. The gift over must be classified as either a private or a charitable trust; it cannot, in chameleon fashion, change its characteristics to fit the needs of the occasion. Assuming, as plaintiffs contend, that the settlors intended to confer enforceable interests in favor of the plaintiffs, the interests fail by reason of violating the rule against perpetuities. And assuming that plaintiffs are claiming as incidental beneficiaries of a charitable trust, they have no special

interest sufficient to accord them standing to sue for enforcement. See 2 Restatement of Trusts 2d, § 391, comment c (1959).

The rule against perpetuities was not interposed by defendants as a defense to plaintiffs' alleged gift, it being felt, apparently, that plaintiffs' claimed interest was so precarious that it would not be necessary to reach the question of the validity of the interest on the perpetuities score. However, the court raised the question sua sponte and called for briefs on the applicability of the rule against perpetuities with respect to the plaintiffs' interest. These requested supplemental briefs have been filed. Plaintiffs contend that since the perpetuities question was not raised either in the court below or in briefs and argument on appeal that we are precluded from now considering it.

■■■■ Normally questions not presented on appeal are not considered by the appellate court in the determination of the case. *Warren v. Parsons,* 224 Or 605, 356 P2d 953, 954-955 (1960); *Maker v. Wellin,* 214 Or 332, 339, 327 P2d 793, 329 P2d 1114 (1958); *Nelson v. Portland Tr. & Sav. Bank,* 153 Or 19, 30, 53 P2d 1051, 55 P2d 1105 (1936); *MacVeagh v. Multnomah County,* 126 Or 417, 424, 270 P 502 (1928); See Annotation: Questions or legal theories affecting trust estates as subject to consideration on appeal though not raised below, 11 ALR2d 317 (1950). But that is not an invariable rule. Where important considerations of public policy are encountered in the solution of a case before the court, it has the duty to apply the law which is dictated by that policy. *Lambert Pharmacal Co. v. Roberts Bros.,* 192 Or 23, 28-31, 233 P2d 258 (1951). The rule against perpetuities is founded upon a strong policy against "inconvenient fetterings of property."

4 Restatement, Property, § 370, comment a and Intro. Notes to Division IV and Part I; 4 Restatement, Property, (1944) pp. 2119-2134. See, Gray, The Rule Against Perpetuities, § 2.1 (4th ed 1942); Simes, Public Policy and the Dead Hand, pp. 32-63 (1955). Cf., 6 American Law of Property, §§ 24.1, 24.9-24.10 (1952). We must give effect to the great public interest in precluding perpetual or excessively extended restraints upon property, even though the issue is not urged by counsel, where the rule against perpetuities clearly applies to the purported gift, as it does in the instant case. A similar case presented substantially this same issue to the New York Court of Appeals in the case of *Carrier v. Carrier,* 226 NY 114, 123 NE 135, 137 (1919). In that case the grantor-trustee was sued for enforcement of the trust. At the trial he admitted the validity of the trust but upon appeal the Appellate Division, of its own motion, raised the issue of a violation of the New York statute forbidding suspension of absolute ownership for more than two lives in being. The Court of Appeals, speaking through Justice Cardozo, held it to be the duty of the court to decide the issue:

"At the threshold stands the question of the validity of the trusts. The grantor no longer concedes that his conveyance is valid. If he did, his concession could not coerce us. The statute limiting the suspension of the absolute ownership is an expression of the public policy of the state. Matter of Walkerly, 108 Cal. 627, 659, 41 Pac. 772, 49 Am. St. Rep. 97. In that respect it is like the rule that governs accumulations of income and restraints on alienation. Matter of Wilcox, 194 N. Y. 288, 289, 297, 87 N. E. 497. These are the 'modes adopted by the common law for forwarding the circulation of property, which it is its policy to promote.' Gray

on the Rule of Perpetuities, § 2a. The welfare of society, it is thought, does not tolerate limitations that will last throughout the ages. The living may not dictate, without restriction, the forms of ownership for posterity."

\* \* \* \* \*

" \* \* \* We are still in the original action. We are dealing with the duty of the trial court to adjudge, and of an appellate court to approve. Their path of duty, we think, is clear. They will not stir a step in aid of an illegal scheme."

See, Annotation: Estoppel to invoke rule or statutes against perpetuities, 162 ALR 156 (1946).

■ But there is another reason which fits within the issues raised upon appeal warranting our consideration of the rule against perpetuities in the case at bar. Plaintiffs themselves make note of the fact that the alleged gift over is for the benefit of a changing membership within the class consisting of the employees of the Journal. Plaintiffs argue that this satisfies the requirement that a trust have definite beneficiaries. We are, therefore, entitled and required to consider whether the alleged gift satisfied this essential element of a trust, i.e., that it designate definite beneficiaries. 1 Restatement of Trusts 2d, § 112 (1959) states the rule as follows:

"A trust is not created unless there is a beneficiary who is definitely ascertained at the time of the creation of the trust or definitely ascertainable within the period of the rule against perpetuities."

Thus it is observed that in order to determine whether these trusts satisfy the requirement that a trust have a definite beneficiary, the rule against perpetuities is necessarily drawn into consideration where the beneficiaries are not ascertainable until some future time

(which may or may not be within the permissible perpetuities period), as is the case with respect to the trust instruments before us. Similarly, the alleged interests of the plaintiffs must fail for the reason that the extent of their interests, if any, is not definitely ascertainable within the permissible perpetuities period. 1 Restatement of Trusts 2d, § 129 (1959).

The decree of the lower court is affirmed.