Argued November 27; affirmed December 12, 1933;
rehearing denied February 6, 1934

# ENDICOTT *v.* BRATZEL

(27 P. (2d) 883)

*W. C. Winslow,* of Salem, for plaintiff.

*W. H. Trindle,* of Salem, for defendants.

*Willis S. Moore,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for intervener.

BELT, J. Cornelia A. Davis died testate on the 17th day of May, 1932, leaving an estate of an appraised value of $150,000. The will was duly admitted to probate and S. M. Endicott, who prepared the will, was appointed as executor of the estate. The executor thereupon instituted this suit to obtain a construction of that part of the will which provides as follows:

"SEVENTH: The balance of my property, of whatever kind, whether personal, real or mixed, including bonds, mortgages, money, notes and choses in action, I bequeath to a trustee or trustees to be hereinafter named, the same to be converted into money or notes bearing not less than five (5%) per cent interest, for the purpose of erecting and maintaining a home for the needy, under the management of some orthodox denomination, to be designated later. No applicant shall be denied admission simply because of his or her creed or sex, but the rules and regulations must be made regardless of such restriction. The Home mentioned is to be built between the tabernacle and the road running south, known as the Marion Road, said land upon which said building shall be erected shall front on the Aumsville-Turner pavement and run to the creek on the south and include not less than five (5) acres of ground."

The complaint alleges in substance that it was the intention of the testatrix to execute a codicil naming

therein a trustee to carry out the purposes of the trust, but that she failed to do so or to name any trustee or any "orthodox denomination" to manage a "home for the needy". In the prayer of the complaint plaintiff asks for a decree as follows:

"(a) Construing the Will of said decedent and determining whether or not the trust created therein was a completed trust, whether or not said trust fails for the lack of a trustee or whether this Court will appoint a trustee to carry out said trust;

"(b) In case this Court determines that said trust was a completed trust and should not fail for the lack of a trustee, that this Court appoint a trustee to take under and by virtue of the terms of said Will;

"(c) For such other, further and different relief as to this Court may seem just and equitable."

The defendant, J. M. Sharp, who is a cousin and the sole heir and next of kin to the testatrix, filed an answer alleging in substance that, by reason of the failure of the testatrix to name a trustee to receive and hold the property bequeathed for the purposes of establishing a home for the needy, and failure to name an orthodox denomination to have control and management of the same, the above provision of the will is inoperative and without legal effect. Defendant prays that the court declare this provision of the will null and void and that the executor be directed to turn over the property to him after the administration of the estate is completed.

The attorney general of the state of Oregon intervened and by answer alleged in substance that the will created a charitable trust notwithstanding the failure of the testatrix to name a trustee or an "orthodox denomination" to carry out the purposes of the trust. The intervener asked that the court appoint the First Christian Church of Turner, Oregon, as trustee, and

that the court should decree that the defendant J. M. Sharp has no right, title, or interest in the property bequeathed under the will.

From a decree in accordance with the prayer of the intervener, the plaintiff-executor and the defendant Sharp join in an appeal.

In the reply brief of defendant-appellant, it is asserted that the clause in question is void and inoperative for the following reasons:

"(a) That no trustee is designated to whom title to the trust property could pass.

"(b) That the will does not provide that the title to the trust property should pass to the executor with power to apply it to a specific use, or to convey the title to trustees with such power.

"(c) That no beneficiaries are named in the will and no person or organization is designated, in whom the testatrix had confidence, with power and authority to select the beneficiaries.

"(d) That no charitable plan is provided for with sufficient definiteness as that a court of equity could by its mandate enforce such plan.

"(e) That the language of the will is not sufficiently definite to indicate what testatrix considered an 'orthodox denomination' and no court of equity has power to determine this for her."

Cornelia Davis was a lifelong member of the Christian Church at Turner, Oregon. Much of her life was devoted to benevolent and philanthropic purposes. In another part of the will under consideration she bequeathed certain household goods and furniture to this church. She also, in the same will, devised her home to the Christian Church at Turner, Oregon, to be used as a permanent home for the resident minister. We advert to these provisions of the will to show that the naming by the court of such church as trustee was an

act which undoubtedly would meet with her approval if she could speak from the grave.

■ We think it is clear from the seventh provision of the will that the testatrix expressed an intention to create a charitable trust. Citation of authority that a "home for the needy" is a public charity is deemed unnecessary. The relief of the poor has always been a prolific field of charity. Equity, in the exercise of its inherent power, has ever looked with favor upon the testamentary disposition of property promotive of public and benevolent purposes. It will endeavor to carry out such charitable grants and give effect to the intention of the testator as expressed in his will, unless such intention contravenes some well established rule of law. To do so is in keeping with the enlightened and philanthropic spirit of the age.

■ We know not why the testatrix failed to name a trustee. Neither do we know why she did not designate an "orthodox denomination" to manage the "home for the needy". Will such failure on her part defeat her clear intention to create a charity? We are not dealing with a private trust. There is a marked distinction between charitable and private trusts: 5 R. C. L. 295. Where property is devised for the purpose of creating a private trust, the trustee who is to take and hold the legal title must be definite and certain, and the beneficiaries of the trust must be clearly identified or be made capable of identification by the terms of the will. Such rule does not obtain, however, where property is devised for charitable purposes. Uncertainty as to the beneficiaries is, indeed, an essential element of a public charity. Neither is a charitable bequest void merely by reason of the failure to appoint a trustee. Where no trustee has been named by the testator, in cases where a valid trust has been created the legal

title to the property devised or bequeathed will be held in trust by the executor or the heir until equity appoints a trustee to administer the trust. When a public charity is once created, the property devised or bequeathed for such purposes will never revert to the heirs. These principles, in the main, have been enunciated by this court in *Estate of Prickett,* 128 Or. 591 (275 P. 605) ; *Wemme v. First Church of Christ, Scientist,* 110 Or. 179 (219 P. 618) ; *In re John's Will,* 30 Or. 494 (47 P. 341, 50 P. 226, 36 L. R. A. 242) ; *Pennoyer v. Wadhams,* 20 Or. 274 (25 P. 720, 11 L. R. A. 210) ; *Raley v. Umatilla County,* 15 Or. 172 (13 P. 890, 3 Am. St. Rep. 142).

■ Did the testatrix express with sufficient certainty and definiteness the object and purpose of the trust? She directed that the balance of her property—whether real, personal or mixed—be converted into money or interest bearing notes to be used for the erection and maintenance of a home for the needy. Thus, there is no uncertainty as to the specific property to be used for trust purposes. Neither is the object and purpose of the trust indefinite or uncertain. The testatrix also specified where the home was to be built and that it was to be under the management of "some orthodox denomination". Further, the trustor provided that no applicant should be denied admission to the home by reason of his or her creed or sex. Hence, no difficulty need be experienced in selecting the beneficiaries. True, it may not be practical to provide a home for all or any great number of needy or destitute people, but that is no reason to defeat a charity. The testatrix should not be thwarted in her charitable purposes merely because she cannot give complete relief to those in need of sustenance. Cornelia Davis having expressed a clear intention to create a charitable trust

and declared with sufficient certainty its object and purpose, equity, which looks with favor upon public charities, will render aid to the end that the trustor's charitable purpose be not defeated.

It is not essential to the validity of the trust that the testatrix specify, in detail, the plan of administering the same. Hence, her failure to designate the ''orthodox denomination'' to manage the home is not fatal. This direction does not relate to the creation or subject matter of the trust, but to the administration thereof. It is urged that, the testatrix having designated no ''orthodox denomination'' and provided no method or rule for determining the same, equity can not administer the trust. We cannot agree with this contention. This clause of the will is merely directory and has no reference to the qualifications of the trustee. Testatrix expressed a desire that, after the home for the needy was erected, it should be under the management of ''some orthodox denomination''. Will it be contended that Cornelia A. Davis did not classify the Christian Church at Turner, Oregon, as an ''orthodox denomination''? The home is to be erected at Turner, Oregon, and it is believed that the Christian Church of Turner is capable, under the guidance and direction of equity, fully to administer this trust. As to the amount of money that should be spent in the erection of the home and the sum to be provided for the maintenance thereof, the trustee, in matters of such importance, should apply to equity for guidance.

We are not concerned with a case wherein the failure to name a trustee is coupled with the fact that the trust is uncertain in respect to its object or purpose. Courts quite generally have failed to uphold trusts in such cases. See numerous authorities collated in note 5 A. L. R. 342, among which is *Grimes v. Harmon,* 35

Ind. 198 (9 Am. Rep. 690), relied upon by appellants. In the instant case, the object and purpose of the charitable trust is expressed with sufficient certainty that it may be administered by the aid of equity. As stated in *Re John's Will,* supra:

"The general rule everywhere is, whether speaking with reference to ordinary or charitable trusts, that a valid trust will never be permitted to fail for want of a trustee."

There is much learning in the books relative to the subject of charitable trusts. It would be an almost endless task to review the authorities. They are legion. The writer feels that he can add nothing to the subject, but is content to rely upon the legal principles enunciated by this court in the cases above cited.

The decree of the lower court is affirmed.