Argued February 1, modified February 28, 1950

# IN THE MATTER OF THE TESTAMENTARY TRUST OF DAN P. STOUFFER, DECEASED QUICK *v.* HAYTER, AS TRUSTEE ET AL.

215 P. (2d) 374

*Ralph E. Moody,* of Salem, argued the cause for appellant. With him on the briefs was Edward K. Piasecki, of Salem.

*C. L. Marsters,* of Dallas, argued the cause for respondents The First Methodist Church of Dallas, Oregon, and the Oregon Claimants' Permanent Fund of the Oregon Conference of the Methodist Church; and *Frederick H. Torp,* of Portland, argued the cause for respondent Willamette University, a corporation. With them on the brief were Hart, Spencer, McCulloch, Rockwood and Davies, of Portland.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY and LATOURETTE, Justices.

LATOURETTE, J.

This appeal involves the construction of the will of Dan B. Stouffer, executed on the 22nd day of April, 1916, and who died on the 21st day of October, 1916.

The testator in his will devised and bequeathed all of his property to Eugene Hayter of Dallas, Oregon, in trust for various purposes, included in which are the provisions hereinafter set out which must be considered to properly determine the questions involved:

"4. * * * and from time to time, as often as once a year, to pay one-half the remainder of such income, rents and profits to my wife, Ella R. Stouffer, during her life; and as to the other half thereof, to pay the same to my daughter, Lina Stouffer Quick, from time to time, and as often as once each year, for and during the term of her life;

"5. Upon the death of my said wife, to convey, transfer, assign, pay over, and deliver unto the First Methodist Episcopal Church, of Dallas, Oregon, or the trustees thereof, or the proper corporation, organization, or officers of said local church, (of which I am a member), a one-sixth part, for the uses and purposes hereinafter in Article V. of this my will particularly specified, and unto Willamette University, a corporation, of Salem, Oregon, a one-twelfth part, for the uses and purposes hereinafter in Article VI. of this my will particularly specified, and unto Kimball College of Theology, of Salem, Oregon, a one-twelfth part for the uses and purposes hereinafter in Article VII. of this my will particularly specified, and unto Conference Claimants' Permanent Fund of the Oregon Conference of the Methodist Episcopal Church, a corporation, of Portland, Oregon, a one-sixth part, for the uses and purposes hereinafter in Article VIII. of this my will particularly specified, *of all the trust property, securities and funds, real and personal, then remaining in the hands of my said trustee or held by him or to which he may be entitled.* (Italics ours.)

"6. In the event my said daughter shall die before my grandson, Dan O. Quick, child of my said daughter, shall have attained the age of twenty-five years, leaving said Dan O. Quick her surviving, to pay over to said Dan O. Quick, if he be then of the age of majority, or to his guardian during his minority, if he be a minor at the death of his said mother, the net income, rents and profits from one-half of the whole of said trust estate, until he attains the age of twenty-five years, and if and when the said Dan O. Quick shall attain the age of twenty-five years, to convey, transfer, assign, pay over and deliver to him as his own property, absolutely, such one-half part of all said trust estate and property, real and personal;

"7. If said Dan O. Quick shall die before attaining the age of twenty-five years, leaving bodily

issue, the share and property which he would have been entitled to had he lived to the age of twenty-five years shall be paid, turned over, conveyed and delivered to his bodily issue; but if said Dan O. Quick shall die before attaining the age of twenty-five years, leaving no bodily issue, then my said trustee shall convey, transfer, assign, pay over and deliver such share and property, viz., the one-half part of the whole of said trust estate, to the organizations hereinbefore named and provided for in subdivision 5 of this article of my will, for the uses and purposes hereinafter in Articles V, VI, VII and VIII particularly specified, in the respective shares and proportions as follows: Unto said First Methodist Episcopal Church at Dallas, Oregon, or the proper corporation, trustees, or officers thereof, a one-third part; unto said Willamette University, a one-sixth part; unto said Kimball College of Theology, a one-sixth part, and unto said Conference Claimants' Permanent Fund of the Oregon Conference of the Methodist Episcopal Church, a one-third part.''

Articles V, VI, VII and VIII directed such bequests to be placed in the endowment funds of such institutions.

Decedent's daughter died on March 25, 1919. The appellant attained the age of 25 years and on January 25, 1937, received his one-half portion of the estate as provided for in Paragraph 6 of the will. Kimball College, mentioned in Paragraph 5 of the will, was dissolved as a corporation on December 31, 1945, and ceased to exist. The widow of the decedent died on January 11, 1947, whereupon the trustee filed his final account and petitioned the court for directions to determine what disposition should be made of the estate.

The lower court decreed that Willamette University should have the one-twelfth part willed to Kimball

College, and that the half remaining in the trustee's hands should all be turned over to the three Methodist institutions, other than Kimball College, one-third to each.

Appellant first contends that since decedent's daughter died prior to the death of the widow of the decedent, and he having received his half portion of the estate under Paragraph 6 of the will, the four institutions mentioned in Paragraph 5 of the will are entitled to one-half of a half, or a fourth portion of the estate, the other fourth to go to appellant under the law of intestate succession, and secondly, that since Kimball College ceased to exist as a corporation, the lower court erred in setting its one-twelfth share, as provided for in Paragraph 5 aforesaid, over to Willamette University under the doctrine of cy pres.

We will take up appellant's first point.

Section 2-216, O. C. L. A., reads as follows:

"In the construction of a statute or instrument, the office of the judge is simply to ascertain what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

■ *In re Holland's Estate,* 180 Or. 1, 6, 175 P. (2d) 156, this court said:

" * * * As was said in Stubbs v. Abel, et al., 114 Or. 610, 233 P. 852, 236 P. 505, the purpose is to enable the judge to fit himself into 'the position of the testator, in order to think as he thought, and to understand as he understood.' But none of our law empowers the court to determine what the testator intended to say: § 2-216 O. C. L. A.: Hansen v. Oregon Humane Society, 142 Or. 104, 18 P.

224

(2d), 1036; Page on Wills (Lifetime Ed.), § 914; Wigmore on Evidence (3d Ed.), Sec. 2459.''

■ It is said by this court *In re Shepherd's Estate*, 152 Or. 15, 36, 41 P. (2d) 444, 49 P. (2d) 448, that:

"* * * It is not, however, for the court to speculate upon what he might have done if the exact situation which has arisen had been in his mind when he made his will, but to determine the meaning of the words actually used and to apply that meaning to the facts presented. * * *"

Both sides in this case agree on the law, but appellant insists that the testator by his will expressed in positive terms his intention while respondents argue that the will must be interpreted as if it were ambiguous.

Paragraph 5 of the will is the only part of the will that deals with testator's estate in so far as the remainder to the four charities is concerned after the death of the widow, and in plain language, the testator directed his trustee to distribute to the four charities involved by fractions, one-half ''of all the trust property, securities and funds, real and personal, *then* remaining in the hands of my said trustee or held by him or to which he may be entitled.'' (Italics ours.)

Paragraphs 6 and 7 of the will refer exclusively to the other half of testator's estate wherein the income of the same was given to the daughter of the deceased with remainder over to appellant should he attain the age of 25 years, otherwise to the four charities should he die without issue.

■ The daughter predeceased the widow, and such one-half was delivered over to appellant so that when the widow died later, there was *then* remaining in the hands of the testator's trustee only one-half of the

estate, and under the plain directions of the will as contained in Paragraph 5 thereof, it was the duty of the trustee to turn over to the said four charities the one-half of the trust fund then remaining in his hands. The other one-half not having been disposed of by the will became the property of appellant under the law of intestate succession.

Respondent argues that testator assumed that his widow would predecease his daughter, but there is nothing in the will supporting this assertion, and of course had the widow predeceased the daughter, the four charities in that event would have taken one-half of the estate instead of one-fourth, as in that event the trustee would have had in his hands the entire estate.

Respondents also argue " * * * that if a will is susceptible of two constructions by one of which the testator disposes of the whole of his estate and by the other of which he disposes of a part of his estate only and dies intestate as to the remainder, the courts will prefer the construction by which the whole of the testator's estate is disposed of."

This of course is the law, but the answer to that is, in this case, that the will is not susceptible of two constructions, but only one, and that is the construction the testator himself put on the will by plain, concise and unequivocal language. To adopt respondents' theory in this case, it would be necessary to omit from Paragraph 5 of the will these words, "of all the trust property * * * then remaining in the hands of my said trustee", and to insert the following words or words of similar import: "*of all the trust property * * * which came into the hands of my said trustee*", which of course would be in direct contravention with Section 2-216, O. C. L. A., supra.

It is our conclusion therefore that the charities mentioned in the will are entitled to one-half of the trust estate remaining in the hands of the trustee, and appellant is entitled to the other half of such trust estate.

The next question involved is whether the one-twelfth interest willed to Kimball College (which ceased to exist after the death of the testator) should lapse and belong to appellant, or should be distributed under the doctrine of cy pres to Willamette University.

■ In 14 C. J. S., Charities, 512, § 52, cy pres has been defined or translated as meaning:

"Cy pres means 'as near to,' and the doctrine is one of construction, the reason or basis thereof being to permit the main purpose of the donor of a charitable trust to be carried out as nearly as may be where it cannot be done to the letter."

In so far as we are able to ascertain, this court has never invoked this doctrine concerning the point raised in this case, but has in the following cases embraced the doctrine in some of its aspects as a part of equity jurisdiction of the courts in this state: *Endicott v. Bratzel*, 145 Or. 654, 27 P. (2d) 883; *Wemme v. First Church of Christ, Scientist*, 110 Or. 179, 219 P. 618, 223 P. 250.

■ The weight of judicial opinion in the United States is that where a charitable institution to which a bequest has been given has lost its charter or otherwise ceased to exist after the demise of the testator, and where a testator has manifested a *general* charitable intent in the will, a court of equity will direct an application of the property to another charitable institution of the same general character so that the charitable purpose of the testator will not fail. 4 Pomeroy,

Equity Jurisprudence, (5th ed.) § 1027; 10 Am. Jur., Charities, 679, § 128; 14 C. J. S., Charities, 516, § 52; 3 Page, Wills (3rd ed.) 606, § 1240; 2 Restatement, Trusts, 1208, 399. A perusal of the above authorities will give a clear exposition of the doctrine of cy pres. Many cases are cited in the footnotes in support of this doctrine, and it would serve no good purpose to quote from them.

■ In construing charitable trusts, the language used is to be given a broad and liberal construction and one favorable to its purpose. 152 A. L. R. 1296.

■ As said in *Endicott v. Bratzel,* supra:

"Equity, in the exercise of its inherent power, has ever looked with favor upon the testamentary disposition of property promotive of public and benevolent purposes. It will endeavor to carry out such charitable grants and give effect to the intention of the testator as expressed in his will, unless such intention contravenes some well established rule of law. To do so is in keeping with the enlightened and philanthropic spirit of the age."

The testator was a member of the Methodist Church and made provisions in Paragraphs 5 and 6 for the four Methodist institutions. One of them, Kimball College, ceased to exist after the death of the testator, and appellant contends that the one-twelfth share willed to it should lapse and go to him, he being the sole heir at law of testator.

We are of the opinion that the testator manifested a general charitable purpose in his will and not a special purpose, and the doctrine of cy pres obtains in this case.

■ Where a testator gives bequests to several charitable institutions, and one of them ceases to exist, a

general charitable intent is manifested. *Kentucky Childrens Home, Lynden, Ky. v. Woods,* 289 Ky. 20, 157 S. W. (2d) 473.

Appellant has cited authorities in support of the proposition that the intent of the testator, as written in the will, shall control and in that we agree. He has also cited four cases, which he claims support his position, with this statement:

> "Cy pres or approximation does not apply where the bequest was made to a corporation which has ceased to exist or is unwilling or unable to receive the property and administer the trust. Brooks v. City of Belfast, 90 Me. 318, 38 A. 222; Wright v. Wright, 225 N. Y. 329, 122 N. E. 213; Miller v. Riddle, 227 Ill. 53, 81 N. E. 48; Gladding v. St. Matthew's Church, 25 R. I. 628, 57 A. 860."

We have gone over these cases carefully and find that in the Maine case cited, the beneficiary ceased to exist prior to the death of the testator, which is not the case at bar. There the court held that the legacy lapsed because, upon the death of the testator, the beneficiary was not in existence, while in the case at bar the bequest vested in Kimball College upon the death of the testator as it was then in existence. *Williamson v. Denison,* 185 Or. 249, 202 P. (2d) 477. In the New York case it was held that a bequest to the Washington Heights Library did not vest at the time of the death of the testator nor until the time for payment arrived. This is contrary to the holding of this court in regard to vesting of estates. *Stevens v. Carroll,* 64 Or. 417, 129 P. 1044, L. R. A. 1918E, 1095. The doctrine of cy pres was not involved in this Illinois case. In the Rhode Island case, the testator evinced no general charitable purpose, as a single charity,

"Saint Ann's Church for Deaf Mutes," was the beneficiary of his bounty.

Appellant further contends that since, by Article VII of the will, Kimball College shall add said bequest to its endowment fund, this indicates an intent on the part of the testator to create a special instead of a general charitable bequest. In *Snow v. President and Trustees of Bowdoin College*, 133 Me. 195, 175 A. 268, a similar situation existed, and the court invoked the doctrine of cy pres.

■ ■ It is well recognized by those courts which have adopted the cy pres doctrine that where a charitable beneficiary has ceased to exist after the demise of the decedent, a court of equity may direct the vesting of such legacy in a similar organization engaged in the same type of beneficent activity. The evidence discloses that Willamette University maintains and for some time has maintained a chair of religious education and offers to its students classes in religion and religious training and education, being a similar organization engaged in the same type of beneficent activity as was Kimball College.

The decree of the lower court will be modified in that the trustee will be directed to turn over one-half of all the trust property, securities and funds, real and personal, remaining in his hands or held by him or to which he may be entitled in the following manner: one-third thereof to the First Methodist Church, of Dallas, Oregon; one-third to Willamette University, a corporation, of Salem, Oregon; and one-third thereof unto Conference Claimants' Permanent Fund of the Oregon Conference of the Methodist Episcopal Church, a corporation, of Portland, Oregon, and the other one-half thereof to appellant without costs or disbursements to either side.