Argued September 29, affirmed November 3, petition for rehearing
denied November 24, 1954, opinion revised January 19, 1955

## HEILIG *v.* DANIEL ET AL. and SCHWABE,
### ADMINISTRATOR ET AL.
275 P. 2d 854
278 P. 2d 988

*John C. Veatch,* of Portland, argued the cause for appellant. With him on the brief were Veatch, Bradshaw & Veatch, of Portland.

*David Fain,* of Portland, argued the cause for defendants-respondents. With him on the brief were Harry Hollis Daniel, Black Kendall & Fain, and Paul Gerhardt, all of Portland.

*Nicholas Jaureguy,* of Portland, argued the cause for intervenors-respondents. With him on the brief were Cake, Jaureguy & Hardy, Carter, Cameron & Carter, all of Portland.

Before LATOURETTE, Chief Justice, and LUSK, BRAND and TOOZE, Justices.

BRAND, J.

This suit involves the construction of a testamentary trust. The plaintiff George W. Heilig, as an individual and as administrator of the estate of Fred Heilig deceased, seeks a decree directing the defendant trustees to account to the estate of Fred Heilig for all of the assets of the trust, to fix the compensation of the trustees, to award attorney's fees, to determine the amount of estate taxes if any and to distribute the remainder to the plaintiff as administrator of the estate of Fred Heilig, deceased. Demurrers to the complaint were sustained. The plaintiff declined to plead further and a decree was entered dismissing the complaint, from which decree the plaintiff appeals.

The trust was created by the will of Mary C. Vogt, but to set forth in orderly fashion the relationship of the parties we begin with Daniel Donohue who died in 1881 survived by one son, Patrick Donohue, and three daughters, Ann Donohue, Margaret Catherine Brady and Bridgid Carle. Ann Donohue died in 1902 un-

married. Brigid Carle died in 1914 survived by two daughters who died, leaving children now living. Patrick Donohue died in 1927 after the death of testatrix Mary C. Vogt. Patrick Donohue was survived by sons and daughters, the number of whom living at date of his death is unknown. Margaret Catherine Brady, one of the children of Daniel Donohue, died on 29 May 1918 leaving her entire estate to her daughter Mary C. Vogt, her sole heir. Mary C. Vogt executed the will and thereby established the trust which is in question here. The real question in the case arises from the facts now to be set forth.

Mary C. Vogt died on 17 July 1935. Her will was admitted to probate; the estate was duly administered, closed and distributed to the trustees pursuant to the will. The defendants Harry Hollis Daniel and John Wuest are now the trustees. Lucile Vogt Heilig, daughter of the testatrix was, as will appear, a beneficiary of the trust. She died intestate, without issue, on 28 November 1951, survived by her husband Fred Heilig as her sole heir at law. Fred Heilig died intestate on 14 June 1952 leaving an estate, a part of which, it is asserted, was a claim against the trustees for the remaining assets of the trust estate. Fred Heilig was survived by the plaintiff, his son by a previous marriage and his sole heir at law. Before his death Fred Heilig instituted this suit. Thereafter the plaintiff was appointed administrator of the estate of Fred Heilig deceased and was substituted as party plaintiff in this suit.

With this factual background we turn to the will of Mary C. Vogt, which was executed on 16 August 1934 and took effect at her death on 17 July 1935. The will made certain bequests, among them one of $5 to the testatrix's son-in-law, Fred Heilig, who was the

husband of Lucile Vogt Heilig, the daughter of the testatrix. The portion of the will with which we are concerned reads as follows:

"FOURTH: I give devise and bequeath unto my Brother-in-law, John Vogt, of Portland, Oregon, and unto Harry Daniel, of Portland, Oregon, all my property and estate of which I die seized, whether real, personal or mixed, in trust however, for my Daughter Lucile Vogt Heilig, the terms of said trust being as follows: (a) Out of the principal and income from my estate, John Vogt and Harry Daniel, shall use as much thereof as they deem necessary for the proper support of my said Daughter Lucile Vogt Heilig, during her lifetime, and upon the death of my said Daughter, then one-half thereof to the heirs of her body or the survivors of them share and share alike, (b) If no survivors of the heirs of the body, the income and the remaining portion of my estate to be divided by said trustees, equally and share and share alike among the blood relations of my deceased mother and myself,".

Turning to clause (a) of the Fourth paragraph of the will we find that Lucile died without any "heirs of her body". It is therefore clear that there could be no distribution *pursuant to the terms of the trust* of the one-half which was to go to the heirs of her body or the survivors of them share and share alike. The appellant claims that

"the entire estate passed to Lucile Vogt Heilig as testatrix's sole heir and that she was not divested of any interest by the terms of the will and, upon her death, the estate passed to her husband and sole heir and from him to appellant. This claim is based upon the grounds (1) that the testamentary trust is void as a violation of the rule against perpetuities; (2) that if the trust be valid, Lucile Vogt Heilig was the sole member of the class, or classes, designated as blood relations of testatrix and her deceased mother and was devised the remainder as

well as a life estate, and (3) that, if testatrix intended to exclude Lucile Vogt Heilig as a remainderman, the remaindermen are indefinite and uncertain and the remainder void.''

The question on which we shall base our decision is whether the complaint states a cause of suit. On this issue the plaintiff who claims the entire corpus is opposed by the trustees and by a mighty band of heirs, representatives and descendants of various degrees. The first group consists of six surviving children of Patrick Donohue who was the brother of Margaret C. Brady who was the mother of the testatrix Mary C. Vogt. They were the sole surviving first consins of the testatrix Mary C. Vogt and are the nearest blood relations of said testatrix and, it is said, of her mother. All of the other intervenors are the children or grandchildren of deceased brothers or sisters of Margaret C. Brady or are representatives of such persons.

■ We will first consider whether the trust created by the will was void under the rule against perpetuities. We agree with the plaintiff that a will speaks from the time of the death of the testator unless a contrary intent is manifest from the language of the will or its provisions. *Pape v. United States National Bank,* 135 Or 650, 297 P 845.

■■ The cardinal principle to be applied in construing a will, when construction is necessary, is to ascertain from the entire instrument the expressed intention of the testator. *In re Howe's Estate,* 190 Or 592, 227 P2d 827. Subject to this cardinal principle a liberal construction should be applied in order to discern the testator's true intention. *Pioneer Trust Co. v. Thielsen et al.,* 199 Or 206, 258 P2d 788. We are to ascertain from the testamentary words, construed according to their natural meaning, the intent of the testator and

to give effect to that intent unless the same is prohibited by some positive rule of law. *Florey v. Meeker,* 194 Or 257, 282, 240 P2d 1177.

■ The plaintiff contends that "Testatrix intended the trust to continue indefinitely for the benefit of such heirs [heirs of Lucile's body] and the trust was created for an illegal purpose and is void." The rule against perpetuities in its classical form was created by Gray:

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Gray, The Rule Against Perpetuities, § 201, 4th ed, 1942.

This is substantially the rule in Oregon. *Imbrie v. Hartrampf,* 100 Or 589, 198 P 521; *Closset et al. v. Burtchaell et al.,* 112 Or 585, 230 P 554; *Gratton v. Gratton's Estate,* 133 Or 65, 283 P 747; *Stein v. U. S. National Bank,* 165 Or 518, 108 P2d 1016.

■ Lucile was a person in being at the time the interest was created by the will of her mother. If then, the estate vested before or immediately after the death of Lucile, there could be no violation of the rule against perpetuities. The expressed purpose of the will was to care for the testatrix's daughter and to make provision concerning the property on the death of the daughter. But the purpose of the trust established by the will was, we think, more limited. The entire estate was left in trust "for my Daughter Lucile". The trustees were authorized to use as much of principal and income as they deemed necessary for the proper support of Lucile during her lifetime. The authority to "use" principal and income meant to spend or consume it or parts of it for Lucile's benefit. The purpose of the trust as expressed goes beyond mere support. By the Fifth paragraph of the will the trustees were authorized to provide Lucile with funds to enable her

to enter into some small business or to attend college. We find no provision in the will which imposes active duties upon the trustees at any time after the death of Lucile unless it be the provision in clause "Fourth (b)" which will be considered later. Nor are there any words in the will which state that the trust provisions are for the benefit of anyone other than Lucile or for any period of time beyond her death. We think that the express purposes of the trust were achieved during Lucile's life, and at her death, it ended. 54 Am Jur 83, Trusts, § 85; 4 Bogert, Part 2, Trusts and Trustees, § 997, p 467; *Pillow v. Wade,* 31 Ark 678 (1187); *Hausen v. Dehlquist,* 232 Iowa 100, 5 NW2d 321, 141 ALR 1304; *Dunn v. Dunn,* 137 NC 533, 50 SE 212; *McKenna v. Seattle First National Bank,* 35 Wash2d 662, 214 P2d 664, 16 ALR 679. If the testatrix had intended that the trustees should continue to administer an active trust in one-half of the estate for the benefit of the heirs of Lucile's body, it would have been a very simple matter to have so stated, and there would doubtless have been some provision as to whether the trustees were authorized in their discretion to distribute the income only for the heirs of the body or to distribute also portions of the corpus as they were empowered to do during the lifetime of Lucile, but clause (a) of paragraph Fourth contains no such provision. On the contrary, it employes words common to outright bequests:

"then one-half thereof to the heirs of her body or the survivors of them share and share alike * * *."

The case is similar to *Dunn v. Dunn,* supra. Had Lucile died leaving heirs of her body, the expressed intent of the will was that at that time one-half of the trust estate should be distributed to the then heirs of her body or the survivors of them and the other half would descend according to the rules of intestacy. Its purpose

having been accomplished, the trust would have ended. We see no reason for reading into the will words which would have provided for a series of equitable life estates to the heirs of Lucile's body and to their heirs indefinitely, thereby rendering the provision void.

The entire absence from clause (a) of any provision authorizing trustees to "use" either principal or income for the benefit of the heirs of Lucile's body is, we think of decisive importance. Surely the testatrix did not intend to incorporate continuing provisions similar to those which authorized the trustees to set Lucile up in business or send her to college. The sole duty of the trustees in the event that Lucile died leaving heirs of her body, would have been to divide the corpus as directed, and, as in the case of *Quick v. Hayter*, 188 Or 218, 215 P2d 374, the half not given to the heirs of Lucile's body and not having been disposed of by the will, would have descended by the law of intestate succession. The words "one-half thereof" in clause (a) clearly refer to the preceding clause, "the principal and income from my estate".

Counsel for the trustees suggests with persuasive force that if the will, clause (a), had been phrased, "to the heirs of her body *and* the survivors of them", it could be argued that the testator intended to create a series of life estates for an indefinite time, but the words actually used were, "to the heirs of her body *or* the survivors of them" (italics ours), indicating a class determinable then, to wit, upon the "death of my said Daughter".

Paragraph Fourth (b) constitutes a direction to the trustees as to their duty in the event there were no survivors of the heirs of the body. Since there were no heirs of the body there could be no survivor of them, nor any issue of a survivor, so in any event the condi-

tion arose which imposed upon the trustees the duty to carry out the provisions of clause (b).

The words, "If no survivors of the heirs of the body" should be given the same meaning in clause (b) as was given to the phrase "heirs of her body *or* the survivors of them" in clause (a). (Italics ours.) There was, of course, the possibility of several heirs of Lucile's body living at the time of her death. If any of them survived at that time, they would share in the corpus. If none of them survived at that time, then the persons named in clause (b) should take. *Guernsey v. Guernsey,* 36 NY 267. Since there were no survivors of the heirs of Lucile's body upon her death, the will required that the income and the "remaining portion" of the estate, that is, the portion which remained after the expenditures of principal and income for the benefit of Lucile, should be divided by the trustees as directed. It was not the income alone, but the corpus, which was to be divided, which would necessarily terminate the trust and the interests of the blood relations would vest as of the death of Lucile.

■ Lucile's husband, Fred Heilig, who was her sole heir, received a specific bequest of $5. Surely we cannot infer any intent on the part of the testatrix that either he or his son George, claiming through him, should receive any more. See *Walls v. Walls,* 218 Ala 147, 117 So 670. Fred Heilig was no blood relation of the testatrix or of the deceased mother of the testatrix. He was not a member of the class to which clause (b) referred. It follows that if the provision for a division of the corpus to the blood relations was valid, then the plaintiff's complaint would be demurrable.

■ We find in the record no reason to hold that the class described as "blood relations of my deceased mother and myself" should be held void because in-

definite. Counsel for the plaintiff cites authority for the proposition that a devise to class takes effect in favor of those who constitute the class at the death of the testator *unless the will shows a contrary intent. Gerrish v. Hinman,* 8 Or 348. But this will shows a contrary intent and the determination of the members of the class must be made as of the time of Lucile's death, at which time there were no survivors of the heirs of her body. *Hay v. Hay,* 317 Mich 370, 26 NW2d 908; *White v. Underwood,* 215 Mass 299, 102 NE 426.

The plaintiff and the defendants appear to agree that the term "relations" means those who would take under the statute of descent and distribution. If this be true, then the term "blood relations of my deceased mother and myself" is even more definite.

The plaintiff's contention that if the trust be valid, Lucile was the sole member of the class designated as remaindermen, depends upon his further contention that the membership of the class was to be determined at the death of the testator. The authorities which plaintiff cites on this point do not involve cases like the present one in which the testator had created a valid trust with alternative provisions, the falling in of either one of which could only occur on the happening of Lucile's death. Clause (a) is expressly dependent upon Lucile's death, and clause (b) could not take effect at all if Lucile was still alive, for the trust would still be administered for her benefit, whether heirs of her body existed or not. Clause (b) must therefore apply as of the time of Lucile's death. Obviously, Lucile could not be a member of the class which became definite only upon her death.

Our conclusion as to the meaning of clause (b) is further fortified by the use of the word "if". The will reads, "*If* no survivors", not *when* no survivors.

(Italics ours.) "If" refers to the time of Lucile's death. "When" might perhaps refer to a future time. We hold that the demurrer to the complaint was properly sustained.

Since the trust terminated with Lucile's death, there was no more uncertainty as to the remaindermen than would exist if there had been no trust and the will had simply provided that on the death of Lucile the corpus of the estate should go to the blood relations. The blood relations living when Lucile died constituted a sufficiently defined class of remaindermen under well-recognized rules. *In re Johnson's Estate,* 100 Or 142, 196 P 385; *In re Estate of Miller,* 117 Or 399, 244 P 526; *In re Gilchrist's Estate,* 50 Wyo 153, 58 P2d 431; *In re Fingerhut's Estate,* 85 NYS2d 716; *In re Halls' Estate,* 71 NYS2d 825; *American Nat. Bank v. Meaders,* 161 Tenn 184, 30 SW2d 246. See also: *Boston State Deposit & Trust Co. v. Blanchard,* 196 Mass 35, 81 NE 654; *Heard v. Read,* 169 Mass 216, 47 NE 778; *Dalton v. White,* 129 F2d 55; *Bridgeport City Trust Co. v. Shaw,* 115 Conn 269, 161 A 341.

The decree of the circuit court is affirmed.

On motion for revision of opinion.

*Peter A. Schwabe,* of Portland, for the motion of intervenors-respondents.

*Cake, Jaureguy & Hardy,* contra.

BRAND, J.

■ Certain of the intervenors-respondents have moved for "revision of opinion" heretofore rendered by this court. Upon re-examination of the intricate relationship of the many parties who have intervened herein, we find two inadvertent errors of fact which

counsel contends should be rectified by reason of their possible effect upon future litigation. The errors of fact, however, have no bearing upon the correctness of our decree insofar as it affirmed the circuit court.

In the opinion we correctly stated that Patrick Donohue died in 1927 and that Mary C. Vogt, the testatrix, died in July 1935. We inadvertently said that Patrick Donohue died *after* the death of the testatrix, which is obviously incorrect. The opinion should read, "Patrick Donohue died in 1927, *before* the death of the testatrix, Mary C. Vogt." Our opinion stated that the first group of claimants "consists of six surviving children of Patrick Donohue who was the brother of Margaret C. Brady who was the mother of the testatrix Mary C. Vogt. They were the sole surviving first cousins of the testatrix Mary C. Vogt * * *." Counsel correctly points out that at the time of the death of the testatrix Mary C. Vogt in 1935, there were then living four additional first cousins; Kate Donohue Reilly, who died in 1937; Rose Ann Conlon, who died in 1948; James Donohue, who died in 1938; and Daniel J. Donohue, who died in 1943. Instead of saying of the six surviving children of Patrick Donohue that "They *were* the sole surviving first cousins of the testatrix Mary C. Vogt", we should have said, "They *are now* the sole surviving first cousins of the testatrix Mary C. Vogt." Our opinion is corrected in the two respects above-mentioned.

The relationship of the parties and intervenors is set forth in the complaint and the case was decided on demurrers to that pleading. It should be obvious that the court had no intention to make findings of fact contrary to those admitted for the purposes of the case by the demurrers.

The other contention of said intervenors other than the six surviving first cousins, is that the court should

have strictly limited its decision to the ruling that the vesting occurred "not later than upon the death of Lucile Heilig." Counsel points out that prior to the institution of this suit a proceeding was brought by the trustees entitled *Harry Hollis Daniel and John Henry Wuest, plaintiffs, v. Andrew F. Brady, et al., defendants.* The action or proceeding was for the construction of the will. The issue in that previous litigation appears to be whether the remainder vested at the death of the testatrix, Mary C. Vogt, or at the death of Lucile Vogt Heilig. In view of this pending litigation counsel asks us to limit our decision as above indicated. In response to the motion for modification of the decree, counsel for the trustees have advised the court as follows:

> "Prior to the filing of the case at bar, a suit was initiated by the instant defendants-respondents in a proceedings entitled Harry Hollis Daniel and John Henry Wuest, plaintiffs, vs. Andrew F. Brady, et al, defendants, Registry No. 204589, in the Circuit Court of the State of Oregon for the County of Multnomah. (This office represents the Trustees, or the plaintiffs, in that suit and similarly represents those Trustees as defendants in the instant case.) That suit is still pending and has been held in abeyance by agreement of all counsel by reason of the 'Heilig' case, which has now been resolved on appeal.

> "As attorneys for the Trustees, we are necessarily compelled to the conclusion that the question of who is entitled to the corpus of this trust estate will be determined in the suit previously filed by the Trustees for that purpose. Should that case find its way to the Supreme Court, it will be necessary at that time to resolve the question of when the remainder interests under the will of Mary C. Vogt, deceased, vested. The case at bar, however, involves only the right or interest of plaintiff-appellant who

has now been eliminated from asserting any interests in the trust estate.

"We express no opinion at this time as to whether the interests of the blood relations vested as of the date of the death of Lucile, or at the death of the testatrix. We are constrained to observe, however, that any such comments would at best be dictum in the case at bar, and therefore respectfully submit that this determination be deferred for and made in the proper case brought for that purpose, to-wit, the case of Harry Hollis Daniel and John Henry Wuest, plaintiffs, vs. Andrew F. Brady, et al, Registry No. 204589, in the Circuit Court of the State of Oregon for the County of Multnomah.

"Understandably, counsel for such of the intervenors who might seek to benefit from any statement to the effect that the interest of the blood relations vested as of the death of Lucile will encourage the court not to delete those statements from the opinion. In fairness, however, to all of the intervenors we have no alternative, as counsel for the Trustees, but to suggest that these references be deleted from the instant opinion as being unnecessary to the proper disposition of the case at bar on appeal.

"The affirmance by this Court of the decree of the Circuit Court was in all respects proper but in affirming the Circuit Court it is not necessary at this time for the Supreme Court to express any opinion as to whether the estate vested at the death of Lucile or at the death of the testatrix."

In view of the position which the trustees deem it their duty to take, and of the claim that the parties have not fully briefed the question as to the date of the vesting, we withdraw all statements in the opinion to the effect that the estate vested on the death of Lucile and content ourselves with the statement that the estate vested "not later than upon the death of

Lucile.'' Counsel for all parties will be free to argue that the vesting occurred, either on the death of Lucile or upon the death of the testatrix. In thus modifying our opinion we do not intend to intimate any present opinion as to whether our earlier pronouncements were or were not correct.