Argued and submitted July 20, 1983, affirmed as modified March 7, 1984

# UNITED STATES NATIONAL BANK OF OREGON,
*Respondent - Cross-Respondent,*

*v.*

# RHILANDER et al,
*Defendants,*

# EATMAN et al,
*Appellants - Cross-Respondents,*

# STATE OF OREGON, acting by and through the STATE LAND BOARD et al,
*Respondents - Cross-Respondents,*

# ERNMAUR, INC. et al,
*Respondents - Cross-Appellants
and Cross-Respondents.*

(119177; CA A25526)

677 P2d 745

J. Michael Alexander, Salem, argued the cause for appellants - cross-respondents. With him on the briefs was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Walter H. Bell, Stayton, waived appearance for respondent - cross-respondent United States National Bank of Oregon.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent - cross-respondent State Land Board.

J. Ray Rhoten, Salem, argued the cause for respondent - cross-appellant Ernmaur, Inc. With him on the briefs was Rhoten, Rhoten & Speerstra, Salem.

Kris Jon Gorsuch, Salem, argued the cause for respondents - cross-respondents Christie School, Salem Catholic Schools, Inc., Society of the Sisters of Holy Names of Jesus and Mary and Servite Sisters of Oregon. With him on the brief were Daniel A. Ritter and Harland, Ritter, Saalfeld & Griggs, Salem.

Eugene E. Feltz, Mark A. Williams and Palmer, Feltz, Sherry & Smith, Portland, filed a brief amicus curiae for Maryville Nursing Home.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In this action for declaratory relief, plaintiff seeks a declaration of the rights of the parties under the 1960 will of Thelma Agnes Miller, who died May 20, 1978. The issue concerns distribution of the residuary estate under paragraph Sixth, which provides:

"SIXTH: * * * I give, devise and bequeath one-half of the remainder of my estate * * * to the Servite Sisters of Oregon for the use of the Marian Home for improvements."

The defendant Servite Sisters of Oregon (Sisters) was incorporated October 9, 1951. In 1954, it built the Marian Home, a nonprofit, charitable convalescent home, and operated it until 1976, when the Sisters sold it to Ernmaur, Inc., a private, for profit corporation. Thereafter, the few remaining members of the Order of the Servite Sisters returned to their mother house in Austria. The record indicates that while the Sisters owned the Marian Home their main activity related to its operation and maintenance. Notwithstanding the sale of the Marian Home, the Servite Sisters of Oregon maintained its legal status as an Oregon non-profit corporation; it has not dissolved, renounced its corporate franchise or liquidated. It has assets and a functioning four-member board of directors. Any gifts or bequests to the Sisters are distributed by the board to other Catholic charities.

Although the trial court concluded, we think correctly, that the bequest did not create a trust for the benefit of the Marian Home with the Sisters as trustee, it held that it was impossible to carry out the testatrix's desire because the Home had been sold to Ernmaur, Inc. Accordingly, it applied the doctrine of *cy pres* and decreed that the property should go to the Maryville Nursing Home and the Benedictine Nursing Home.

We reject the claims of the various parties to this proceeding[1] other than the Sisters, because the Sisters is the designated legatee, is in existence and is legally capable of receiving the property and using it for the benefit of other

---

[1] Appellants/cross-respondents Eatman et al. are heirs at law of the deceased and argue that the devise lapsed and that they should take by intestacy. Respondents/cross-respondents, except for the State of Oregon, are Catholic charities which had a common interest with the Servite Sisters of Oregon in the disposition of decedent's estate.

Catholic charities consistent with its charter.[2] This is not a case like *Quick v. Hayter,* 188 Or 218, 215 P2d 374 (1950), where the charitable legatee has ceased to exist at the time the gift or legacy is to take effect, in which case the court may direct the vesting of the legacy in a similar organization engaged in the same type of beneficent activity.[3]

---

[2] The Articles of Incorporation of the Servite Sisters of Oregon states the object, business, or pursuit in which the corporation proposes to engage:

"This corporation shall not engage in any form of trade or commerce, or carry on any activity which will result in a remunerative profit to the corporation or to its members. Subject to the foregoing limitations, the object, business, or pursuit of this corporation shall be as follows:

"A. To establish and maintain convalescent homes, hospitals for the care and welfare of the aged, ill or injured persons and all business for the proper operation thereof.

"B. To visit, help and aid the sick, helpless and needy and to do all things possible at all times that women consecrated to God may and can do for the alleviation, benefit and uplift of humanity.

"C. To take, receive, have, own and hold or mortgage, lease, sell or otherwise dispose of any and all property of whatever nature or description of which property this corporation is or may become possessed.

"D. To receive, own, hold and possess by bequest, devise, grant or purchase, rent or lease, any real or personal property and to mortgage, sell, or otherwise dispose of the same for the benefit, use or purposes of the corporation."

[3] In *Hayter,* the court stated the general policy considerations behind the doctrine of *cy pres:*

"The weight of judicial opinion in the United States is that where a charitable institution to which a bequest has been given has lost its charter or otherwise ceased to exist after the demise of the testator, and where a testator has manifested a *general* charitable intent in the will, a court of equity will direct an application of the property to another charitable institution of the same *general* character so that the charitable purpose of the testator will not fail." 188 Or at 226.

The court went on to quote from *Endicott v. Bratzel,* 145 Or 654, 658, 27 P2d 883 (1934):

" 'Equity, in the exercise of its inherent power, has ever looked with favor upon the testamentary disposition of property promotive of public and benevolent purposes. It will endeavor to carry out such charitable grants and give effect to the intention of the testator as expressed in his will, unless such intention contravenes some well established rule of law. To do so is in keeping with the enlightened and philanthropic spirit of the age.' " 188 Or at 227.

The court held that the testator had manifested a general charitable intent in his will by making bequests to several charitable institutions, and applied the doctrine of *cy pres.* The court found that the bequest at issue had vested on the testator's death, because the beneficiary was still in existence at that time. It stated:

"It is well recognized by those courts which have adopted the cy pres doctrine that where a charitable beneficiary has ceased to exist after the demise of the decedent, a court of equity may direct the vesting of such legacy in a similar organization engaged in the same type of beneficent activity. * * *" 188 Or at 229.

Because the legatee is in existence and is capable of taking the property, the legacy did not lapse. For the same reason, and for the additional reason that the bequest is not in trust, there is no occasion to apply *cy pres.*

The decree is modified to provide that under paragraph Sixth of the will, one-half of the remainder of the testatrix's estate be distributed to Servite Sisters of Oregon, a non-profit Oregon corporation. Affirmed as modified.